**CONSOLIDATED WORLD HOUSEWARES, INC.,**
Plaintiff,

v.

**Gerald A. FINKLE, Jack D. Bankier, Kenneth J. Muderlak, and Bankier Companies, Inc., Defendants.**

**No. 86 C 8686.**

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1987.

---

Stanley J. Adelman, Rudnick & Wolf, Chicago, Ill., for plaintiff.

Timothy J. McGonegle/Peter J. Miller, Ashcraft & Ashcraft, Chicago, Ill., for defendant Finkle.

Dennis A. Gross, Hall, Van Santen, Steadman, & Simpson, Chicago, Ill., for defendants Bankier, Muderlak, and Bankier Companies, Inc.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

The plaintiff is the owner of rights under two patent applications covering substantially the same subject matter. Faced with the prospect of paying royalties under both assignments, as well as the possibility of proceeding under a false application in the Patent and Trademark Office ("PTO"), the plaintiff asks this court to declare the true creator or creators of the invention underlying the applications.

The facts here are simple. On August 26, 1985, Gerald Finkle filed with the PTO a patent application for a food scale which measures the weight and caloric content of the food being weighed. He assigned his rights under the application to the plaintiff between two and three weeks later. On August 6, 1986, Jack Bankier and Kenneth Muderlak filed utility and design patent applications in the PTO for a "substantially identical" device. Just prior to this filing, they assigned their rights in the applications to Bankier Companies, Inc. ("BCI"). The plaintiff, in order to safeguard its ownership of the invention, purchased BCI's rights to these applications on September 17, 1986. This suit, which names as defendants BCI and all of the claimed inventors, followed.

It is, of course, obvious that "in order to determine the correct inventorship of the Weight Watcher's Scale, this Court will have to conduct what amounts to an interference proceeding." Bankier-Muderlak-BCI brief at 4. It is also clear that the PTO alone may conduct an interference. The patent and trademark act states that "[t]he Board of Patent Appeals and Interferences shall determine questions of priority." 35 U.S.C. § 135. Consistent with this grant of authority, section 146 of the statute contemplates judicial action where a "party dissatisfied with the decision" of the Board brings an action for review. 35 U.S.C. § 146. Given this statutory scheme, the exhaustion of remedies before the PTO is normally a prerequisite to maintaining a civil action. *General Motors Corp. v. R.E. Dietz Co.*, 420 F.2d 1303, 1305–06 (D.C.Cir. 1969).

The plaintiff argues that, because rights to both patent applications are owned by one person (itself), this is not the normal case. Specifically, it points to a regulation adopted by the Commission which states that

Unless good cause is shown an interference shall not be declared or continued

between (1) applications owned by a single party....

37 C.F.R. § 1.602(a). Because it feels it cannot meet the burden of showing good cause, the plaintiff asserts that it has no viable remedies before the PTO. It accordingly asks this court to do what it claims the PTO will not.

Based on the statutory scheme created by Congress, which calls for original determination of interference actions by the PTO, I must decline this request since the plaintiff is able, despite its belief to the contrary, to show good cause.[1] The reluctance of the PTO to entertain interferences is based on the fact that these proceedings are expensive and time-consuming. *Manual of Patent Examining Procedures* § 2301.0 (5th Ed.1985). In cases like the one at bar, the PTO's concern with expense is amplified because there is often no true conflict between parties necessitating administrative action. *Id.*, at § 2302. Given this, the PTO has placed the burden of determining priority of invention on the common owner of the conflicting claims. *Id.;* see *Morehouse v. Armbruster*, 209 USPQ 514, 516 (Comm.Pat.1980).

This policy is embodied in 37 C.F.R. § 1.78(c). That passage states:

Where two or more applications ... naming different inventors and owned by the same party contain conflicting claims, the assignee may be called upon to state which named inventor is the prior inventor. In addition to making said statement, the assignee may also explain why an interference should be declared or that no conflict exists in fact.

This provision, like § 1.602(a) quoted above, envisions an exception to the PTO's general refusal to hear an interference between applications of a common owner. *Malone v. Toth, Rupp, and Meyer*, 202 USPQ 395 (Comm.Pat.1978), the only re-

cent case discussing the PTO's view of what constitutes "good cause," suggests that the plaintiff here falls under that exception.

In *Malone*, the Commissioner of Patents and Trademarks held that "the mere desire" to have the PTO decide an interference was not "good cause" under the agency's regulations. Rather, to come under the exception the common owner must show that "it is impossible [for him] to determine priority." 202 USPQ at 396. Such a case, the Commissioner observed, occurred in *Sprague v. Howe v. Work*, 1925 C.D. 115 (1924). There,

it was alleged that the common assignee was unable to determine Work's dates of invention because certain engineers for a railroad company had refused to investigate their files for papers submitted by Work until and unless they were compelled to do so by court order; thus, it was necessary for the interference to proceed to the testimony stage so that the engineers could be compelled to testify.

202 USPQ at 396. In contrast to this situation, the Commissioner noted in *Malone*, there was no allegation "that any evidence is unavailable to the common assignee," *id.* The petition to declare an interference was therefore denied.

Because the plaintiff here *has* alleged that evidence is unavailable to him, I believe he falls under *Sprague* and the good cause exception discussed in *Malone*. The complaint indicates, and the plaintiff's briefs reiterate, that Finkle has refused to cooperate in the plaintiff's efforts to determine priority. See Complaint, ¶ 29; Pl. Mem. in Opposition to Motions to Dismiss or Stay, at 2–3, 5, and Ex. 1 (attached thereto). This obstinence on Finkle's part, the plaintiff further asserts, makes it impossible for it to decide the issue of inven-

---

**1.** The plaintiff premises its action on 28 U.S.C. § 1338(a), which vests the district courts with jurisdiction over "any civil action arising under any Act of Congress" relating to, among other matters, patents. In the absence of some action by the patent office, I question whether the priority issue raised by the plaintiff vests this court with jurisdiction under that grant. Nor

has the court found, or the parties supplied, cases adequately addressing this issue.

In view of my holding that the plaintiff can, and therefore must, proceed in the PTO before seeking judicial relief, I need not consider whether this court has the power to act where no redress lies before the Board of Patent Appeals and Interferences.

**392**

torship itself. *Id.* at 5. This situation, which is identical to that posed in *Sprague*, constitutes good cause under PTO regulations as interpreted by *Malone*. Accordingly, I cannot hear this action.

### Conclusion

Because the plaintiff has failed to exhaust remedies available under the Patent and Trademark Act and the accompanying regulations of the PTO, this action is dismissed without prejudice.

It is so ordered.