**NATIONAL SATELLITE SPORTS, INC., Plaintiff,**

v.

**TIME WARNER ENTERTAINMENT CO. L.P., Defendants.**

Nos. 02 CIV. 342(JSR), 02 CIV. 346(JSR).

United States District Court, S.D. New York.

Sept. 6, 2002.

attacks the amended complaint, if any, filed     by plaintiff.

Michael Dell, Kramer Levin Naftalis & Frankel, LLP, New York City, for plaintiff.

Neil Gorsuch, Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C., Washington, DC, Henk J. Brands, Eugene M. Paige, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, DC, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Pending before the Court in these consolidated actions [1] is the motion of defendant Time Warner Entertainment Co. L.P. ("Time Warner") to dismiss the complaints of plaintiff National Satellite Sports, Inc. ("NSS"). The complaints allege, in essence, that Time Warner violated the anti-piracy provisions of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605, when, notwithstanding that NSS, a satellite broadcaster, held the exclusive right to broadcast the January 16, 1999 boxing match between Mike Tyson and Francois Botha to commercial customers in certain states, Time Warner, a cable broadcaster, allowed its "pay-per-view" cable broadcast of the fight to be utilized, not just by the intended residential customers, but by commercial establishments as well. In moving to dismiss, Time Warner contends that its alleged misconduct falls outside the scope of the provisions of the Communications Act directed at both satellite and cable piracy, because it is, in effect, in between. For the reasons set forth below, defendant's motion to dismiss is hereby denied.

■ The first count of the complaint alleges a violation of § 553 of the Communications Act, which provides, *inter alia*, that "[n]o person shall ... assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law," 47 U.S.C. § 553(a)(1),[2] and further provides that a "person aggrieved" by such a violation may bring a civil action against the violater, 47 U.S.C. § 553(c)(1). With respect to this count, Time Warner principally argues that a "person aggrieved" under this provision must be a "cable operator," as defined in the Act at § 522(5), and that NSS, which broadcasts its programs via satellite, therefore lacks standing to sue under § 553.

The plain text of § 553 is, however, not so limited, but rather accords standing to sue to any "person" who is "aggrieved," *i.e.*, proximately injured, by the violation. "Person," in turn, is broadly defined in

---

1. Additionally, the following six cases, by stipulation of the parties so ordered by this Court on May 30, 2002, have been consolidated for all pre-trial purposes with the above-captioned actions: *Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co., L P.*, 02 Civ. 3883(JSR), formerly CV–02–0170 (E.D.N.Y.); *Nat'l Satellite Sports, Inc. v. AOL Time Warner Inc., et al.*, 02 Civ. 3837(JSR), formerly 5:01CV1631 (N.D.Ohio); *Nat'l Satellite Sports, Inc. v. AOL Time Warner Inc., et al.*, 02 Civ. 3989(JSR), formerly C2–01–1239 (S.D.Ohio); *Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co., L.P., et al.*, 02 Civ. 3667(JSR), formerly 8:01–cv–1730–T–24MSS (M.D.Fl.); *Nat'l Satellite Sports, Inc. v. Para-gon Communications, et al.*, SA–01–CA–0872 (W.D.Tex.); *Nat'l Satellite Sports, Inc. v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 02 Civ. 3928, formerly 02–C–40 (E.D.Wis.).

2. The statute further provides that "the term 'assist in intercepting or receiving' shall include the manufacture or distribution of equipment intended by the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system...." 47 U.S.C. § 553(a)(2).

§ 522(15) of the Act to reach, *inter alia,* persons in the position of NSS. *See Don King Productions/Kingvision v. Lovato,* 911 F.Supp. 419, 421–22 (N.D.Cal.1995). While this interpretation of "person aggrieved" is also consistent with the legislative history and purpose of § 553, *see Gen. Instrument Corp. v. Nu–Tek Elecs. & Mfg., Inc.,* 197 F.3d 83, 89 (3d Cir.1999), simply from the plain meaning of the statutory language alone defendant's argument must be rejected.

■ Time Warner also contends that the plaintiff's § 553 claims should be dismissed because § 553(a)(1) only bars a person from such interception of signals as is not "specifically authorized ... by a cable operator," and the complaints here allege that Time Warner, a cable operator, authorized, albeit improperly, the cable transmissions of the fight to commercial establishments. *See* Complaints at ¶ 15. But such an argument fails to make the obvious distinction between a lawful authorization blessed by the statute and the wholly unlawful authorization here alleged. For a cable operator lawfully permitted to broadcast a fight to residential customers to allow its services to be used to permit commercial establishments to tap-in to the broadcast without paying the party that holds the exclusive right to broadcast the fight commercially is not an authorization a cable operator can give, under § 553 or otherwise. *See generally, Entm't by J & J, Inc. v. Time Warner Entm't–Advance Newhouse P'ship,* Dkt. No. A–02–CA–109–SS (W.D.Tex., Aug. 5, 2002).

■ The other count of the complaints alleges a violation of § 605 of the Communication Act, which addresses similar misconduct from the standpoint of satellite broadcasting and which provides in pertinent part that "no person ... transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception," 47 U.S.C. § 605(a). Time Warner previously challenged the standing of NSS to bring a § 605 claim, in circumstances essentially identical to those here alleged, in *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900 (6th Cir.2001), where Time Warner was one of the defendants. The Sixth Circuit, however, held that NSS had standing to sue under § 605. *See id.* at 911–912. Time Warner nonetheless contends that *Eliadis* should not preclude its challenge here to NSS's standing to bring a § 605 claim because the Sixth Circuit itself failed to give preclusive effect to an earlier district court ruling in an unreported case, *Nat'l Satellite Sports, Inc. v. Lyndstalder, Inc., d/b/a/ Coach's Corner, et al.,* 97 Civ.2039 (N.D.Ohio, July 13, 1998), that resolved the issue favorably to Time Warner. *See* Reply Memorandum in Support of Time Warner's Motion to Dismiss, Ex. 2 (transcript of oral ruling in *Coach's Corner*). Specifically, Time Warner contends that the Sixth Circuit did not give *Coach's Corner* preclusive effect because the latter rested its decision upon alternative holdings, but that, while the Sixth Circuit does not recognize alternative holdings as preclusive, the Second Circuit does. *See Eliadis,* 253 F.3d at 908; *compare, e.g., Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 45 (2d Cir.1986).

This argument, however, misreads *Eliadis.* Contrary to defendant's reading, the Sixth Circuit explicitly stated that it need not reach the issue of whether or not to give preclusive effect to lower court decisions that offer alternative grounds for decisions. *See Eliadis,* 253 F.3d at 909–910. Instead, the *Eliadis* court concluded that on any fair reading of the district court's bench ruling in *Coach's Corner,* it

was obvious that the primary ground for the Court's decision against NSS (which was not appealed) was that NSS's particular claims in that case were contractually barred. While the district court also made a brief and conclusory statement to the effect that NSS lacked standing under § 605, this alternative holding was plainly subordinate to (and, indeed, unnecessary in light of) the district court's primary conclusion. *Id.* at 910. Accordingly, the Sixth Circuit concluded, where "one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion." *Id.*

Given the Sixth Circuit's determination that the § 605 standing issue was not necessary to the outcome in *Coach's Corner*, the alleged differences between the Sixth and Second Circuits' preclusion regimes are of no moment here. While the Second Circuit treats alternative grounds as equally preclusive, *see Gelb,* 798 F.2d at 45, this does not erase the requirement that each ground must be "necessary" to the outcome—a requirement that the Sixth Circuit found was not met by the *Coach's Corner* treatment of the standing argument.

Although Time Warner also attempts to argue here that its instant objections to NSS' standing under § 605 are factually and legally distinguishable from those it raised in *Eliadis,* a close comparison of the briefs and arguments there with those presented here demonstrates the essential identity of the facts and arguments raised in both forums. Accordingly, this Court accords preclusive effect to the *Eliadis* decision. *See also, Nat'l Post Office Mail Handlers v. Am. Postal Workers Union,* 907 F.2d 190, 194 (D.C.Cir.1990) (preclusive effect given to the ruling of different circuit, "regardless of whether we would reject or accept our sister circuit's position").

As with the § 553 count, Time Warner also argues that, even if NSS has standing, the § 605 count must be dismissed because its communications to the commercial establishments in question were through "authorized channels of transmission or reception," *see* 47 U.S.C. § 605(a). However, as *Eliadis* itself states: "Time Warner ... [argues] that at all times it was transmitting the event through fully authorized channels. But this is incorrect, because Time Warner was not authorized to transmit the event to commercial establishments." *See Eliadis,* 253 F.3d at 916.

The Court has considered defendant's other arguments and finds them either without merit or addressed to matters outside the pleadings. Accordingly, defendant's motion to dismiss the complaints is denied in its entirely.

SO ORDERED.