**CONSOLIDATED WORLD HOUSEWARES, INC.,**
Plaintiff-Appellant,

v.

**Gerald A. FINKLE, Jack D. Bankier, Kenneth J. Muderlak, and Bankier Companies, Inc., Defendants-Appellees.**

No. 87–1278.

United States Court of Appeals,
Federal Circuit.

Oct. 9, 1987.

Richard S. Davis, Rudnick & Wolfe, Chicago, Ill., argued, for plaintiff-appellant. With him on the brief, were Stanley J. Adelman and Mark I. Feldman.

Timothy J. McGonegle, Ashcraft & Ashcraft, Ltd., Chicago, Ill., argued, for defendant-appellee Finkle. Peter J. Miller, Ashcraft & Ashcraft, Ltd., Chicago, Ill., of counsel.

Dennis A. Gross, Hill, Van Santen, Steadman & Simpson, Chicago, Ill., argued, for defendant-appellee Bankier.

Before MARKEY, Chief Judge, and DAVIS and BISSELL, Circuit Judges.

## ORDER

MARKEY, Chief Judge.

Because this court lacks jurisdiction, we transfer this appeal to the United States Court of Appeals for the Seventh Circuit. 28 U.S.C. § 1631 (1982).

### Background

On 13 September 1985, Consolidated World Housewares, Inc. (CH) entered a contract, called a "Property Transfer Agreement", with Gerald A. Finkle (Finkle). That contract recited that (1) Finkle is the sole inventor of an invention (the invention) on which he filed an application for patent; (2) Finkle "assigns, sells, transfers, sets over and delivers to [CH] all of his right, title, and interest in and to the Invention ...;" (3) "[t]his assignment and sale includes all of Finkle's interest in and to the Invention, the [patent] application attached hereto, any letters patent, both foreign and domestic, that may or shall issue thereon ...;" (4) Finkle warranted his title and authority to transfer it; and (5) Finkle indemnified CH from loss if any of his warranties failed. The contract was made governable by the laws of Illinois.

On 8 September 1986, the Patent and Trademark Office (PTO) allowed the Finkle application, on which a patent would issue on payment of the issue fee before December 8, 1986.

On 17 September 1986, CH entered a second contract, called an "Assignment Agreement" with Bankier Companies, Inc. (BCI). That contract recited that: (1) CH is the owner of the Finkle Application; (2) CH had agreed to pay royalties to Finkle; (3) Jack D. Bankier (Bankier) and Kenneth J. Muderlak (Muderlak) claimed "inventorship and ownership" rights in the invention, had

filed applications for apparatus and design patents on the invention, and had assigned those applications to BCI; (4) BCI was claiming sole ownership of the invention because it owned those two applications; (5) BCI assigned to CH all of BCI's right, title, etc. (repeating the transfer language of the Finkle contract); (6) CH would promptly initiate a lawsuit against Finkle and BCI; (7) BCI would consult and cooperate with CH and its attorneys in all proceedings in the lawsuit; (8) CH would place in escrow all royalties earned on sales after date of the contract;[1] and (9) BCI would not contest or challenge CH's ownership of the invention. The contract was made governable by the laws of Illinois.

*Proceedings in the District Court*

On 7 November 1986, CH filed in the United States District Court for the Northern District of Illinois what it called a declaratory judgment suit seeking "relief in connection with two conflicting patent applications owned by [CH]," and asking the court "to declare the true inventor or inventors...." Citing its possible problems of misdirected royalty payments and invalidating a patent not issued to the true inventor, the complaint says "CH needs a judicial determination of the true inventor ..." and "CH needs a judicial determination of the original owner or owners of the Invention."

On 19 November 1986, CH petitioned the PTO to withdraw the Finkle application from issuance, thereby precluding a patent to Finkle until the true inventorship could be determined.

On 2 December 1986, Finkle moved to dismiss the complaint: (1) under Rule 12(b)(1), Fed.R.Civ.P., because it presented no case or controversy; (2) CH's own acts (entering the BCI contract and its collusive provision for bringing this action) created CH's "problem"; (3) the PTO has exclusive authority to conduct interferences; and (4) CH had not exhausted its administrative remedy in the PTO.

On 3 December 1986, BCI, Bankier, and Muderlak filed an "Answer and Counter-claim [sic, Crossclaim]" against Finkle. The "Answer" *admitted* all allegations of the complaint relating to the "defendants'" relationship with plaintiff CH, including the reasons cited by CH on why CH "needs" a judicial determination of inventorship. The crossclaim repeated the allegations of CH's complaint, claimed inventorship, and sought an order determining that: (1) Bankier and Muderlak are the true inventors of the invention; (2) Finkle has no interest in the inventions claimed in the two patent applications filed by Bankier and Muderlak; and (3) Finkle must notify the PTO that he is not the true inventor. Nowhere did the crossclaim indicate a rationale for its filing by parties who had assigned all right, title, and interest in the invention and in their patent applications to the plaintiff CH.

*The District Court's Decision*

Citing 35 U.S.C. § 135, the district court noted that: (1) only the PTO may conduct an interference; (2) judicial involvement must await the PTO decision, 35 U.S.C. § 146; (3) exhaustion of the PTO remedy is thus required; (4) under 37 CFR § 1.602(a), the PTO will not normally declare an interference between "applications owned by a single party"; (5) the PTO has indicated that it will declare such an interference when the common assignee shows a nonavailability of evidence; (6) the complaint says Finkle has refused his cooperation in determining priority and says CH cannot, therefore, itself determine priority; and (7) CH has thus not exhausted remedies available in the PTO. Expressing doubt of its jurisdiction under 28 U.S.C. § 1338(a) in the absence of some action by the PTO, noting the absence of any citation of authority, and questioning whether the priority issue vested jurisdiction under § 1338(a), the district court said that, having required exhaustion, it need not consider whether it had the power to act absent an administrative remedy. On 25 February 1987, the court dismissed the complaint without prejudice for failure to exhaust the PTO reme-

---

1. Finkle was not a party to this contract.

dy. *Consolidated World Housewares, Inc. v. Finkle*, 662 F.Supp. 389 (N.D.Ill.1987).

The district court did not mention the crossclaim, and crossclaimants did not call that omission to the court's attention.

### The Appeal

Citing no case in which a party that had acquired by contract the interests of separate inventive entities in the same invention had been found entitled to a court judgment declaring priority between those entities, CH's main brief attacked the requirement that it exhaust its PTO remedy. It then responded to the district court's concern over its jurisdiction under § 1338(a), only by citing *Goodman v. Lee*, 815 F.2d 1030, 2 USPQ2d 1724 (5th Cir.1987) (suit for judgment declaring plaintiff the co-author of a song is under § 1338(a)), and saying "the inventorship issue ... [is] the lawsuit's cause of action and jurisdictional basis."

Finkle's brief says: (1) the appeal is moot because the PTO declared the interference "needed" by CH on July 14, 1987; (2) the district court and this court are without jurisdiction because CH's complaint does not fall within § 1338(a); (3) the conduct of interferences is restricted to the PTO; (4) no federal court has jurisdiction to conduct interferences; (5) this is a contract suit respecting the rightful distribution of royalties; (6) the PTO's declaration of the interference confirms the district court's determination that CH had that remedy available; and, (7) if the district court is held to have had jurisdiction, its order granting Finkle's motion to dismiss should be affirmed.

Though BCI, Bankier, and Muderlak filed no notice of appeal from the dismissal of their crossclaim, they elected to file an *appellee's* brief in this court. They devote, however, ten pages of that brief to support of *appellant* CH's arguments, and one page to an unsupported assertion that their crossclaim arises under § 1338(a) because

it requires application of 35 U.S.C. §§ 102(g), 102(f).

CH filed a reply brief, saying: (1) the PTO limitation of the interference to the evidentiary phase, and requiring CH to then determine inventorship, leaves CH without an administrative remedy; (2) CH's complaint presents a cause of action arising under the patent laws because it is a "patent case" which need not involve an issued patent; and (3) efficiency, judicial economy, and common sense dictate reversal, because otherwise CH would have to decide inventorship and royalty payments, if it chose one inventor it might be sued by the other, and because a judicial determination would be accorded more weight in future litigation than would a decision by CH.

Notified of the date set for oral argument, the parties submitted the appeal on the briefs.

### ANALYSIS

The present case, in Hamlet's phrase, "is sicklied o'er with the pale cast of thought" with which CH has replaced its "native hue of resolution."[2] CH's 1986 agreement with a party claiming the same invention in respect of which it had contracted a year earlier with Finkle, and its agreement to collusively prosecute what it calls a "patent case" to extricate itself from that self-created circumstance, paints a picture appalling. With lawyers at its beck and call, and the PTO-gathered evidence available, CH continues in this court its effort to avoid the consequences attendant on making its own decision, an effort that began with a blind rush to file a "patent case" in the nearest courthouse. The crossclaim by BCI, Bankier, and Muderlak, none of whom has any interest in the invention, reflects a similarly pale cast of thought.

The initial question we must resolve in any appeal is whether we have subject matter jurisdiction over the judgment of the district court from which the appeal has been taken. *Rigaku Corp. v. Ferrofluid-*

---

**2.** W. Shakespeare, *The Tragedy of Hamlet, Prince of Denmark*, (1970 ed.) act 3, sc. 1, line 84.

*ics Corp.*, 800 F.2d 1115, 1116, 231 USPQ 139, 140 (Fed.Cir.1986). Under the circumstances of this case, we have jurisdiction of the appeal only if the jurisdiction of the district court was based in whole or in part on 28 U.S.C. § 1338(a).

Section 1338(a) vests a district court with jurisdiction of any civil action arising under any Act of Congress relating to patents. However, as this court has repeatedly said, the mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws. *Ballard Medical Prods. v. Wright*, 823 F.2d 527, 530–31, 3 USPQ2d 1337, 1339, (Fed.Cir.1987); *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1551–53, 3 USPQ2d 1241, 1246–47 (Fed.Cir.1987); *see Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1432, 223 USPQ 1074, 1081 (Fed.Cir.1984) (*in banc*).

As the district court correctly suggested, it did not have original jurisdiction to conduct an interference under § 1338(a) or under any other statute because the United States Patent and Trademark Office was granted that function exclusively in 35 U.S.C. § 135(a) (Supp. III 1985). *See Consolidated World Housewares*, 662 F.Supp. at 391 n. 1. That jurisdictional issue being laid to rest, any controversy between the parties, if controversy there be, can only be contractual. That a contract action may involve a determination of the true inventor does not convert that action into one "arising under" the patent laws. *See Ballard Medical Prods.*, 823 F.2d at 530, 3 USPQ2d at 1339.

The contractual contretemps which CH created for itself could not possibly create any "cause of action" under § 1338 for CH. Nor is it possible to find a party against whom such a cause of action may be exerted. Neither Finkle nor BCI nor Bankier nor Muderlak has sued CH or threatened CH with suit, or done anything contrary to CH's interests in the invention. The possibility of a dispute over royalties under CH's contracts would raise at most a matter of contract law. That CH, which owns the invention and all patent applications on it, seeks a declaration of legitima-

cy for one of its two contracts does not, contrary to CH's bold and unsupported assertion, create for CH a "cause of action arising under any Act of Congress relating to patents." The district court, therefore, had no jurisdiction under § 1338(a).

Because no notice of appeal was filed from the effective dismissal of the cross-claim, that action is not before us.

If CH has a cause of action here, it could not possibly have arisen under 28 U.S.C. § 1338(a) (1982). Hence, this court is without jurisdiction to entertain CH's appeal from the district court's order and this appeal must be transferred.

Accordingly, IT IS ORDERED:

This appeal is transferred to the Court of Appeals for the Seventh Circuit, 28 U.S.C. § 1631.