**DON KING PRODUCTIONS/KINGVISION, Plaintiff,**

v.

**Theodore O. LOVATO, Jr., et al., Defendants.**

No. C–95 02827 TEH.

United States District Court, N.D. California.

Dec. 18, 1995.

Matthew J. Webb, Law Offices of Matthew J. Webb, Oakland, CA, for Don King Productions/Kingvision.

Theodore O. Lovato, Jr., Rodeo, CA, pro se.

Cheryl L. Hicks, Law Offices of Brown & Hicks, Oakland, CA, for Otaez Mexi–Restaurant.

Douglas P. Haffer, Law Offices of Douglas P. Haffer, Oakland, CA, for Amadeo Gonzalez, Salvador Lopez, Rosa F. Chavez.

Larry E. Cook, Casper Meadows & Schwartz, Walnut Creek, CA, for Jesus L. Barajas.

## ORDER

THELTON E. HENDERSON, Chief Judge.

Plaintiff in the above captioned action filed suit under the Federal Communications Act seeking damages and injunctive relief in relation to defendants' alleged unlawful interception and broadcast of a championship boxing fight for which plaintiff owned the exclusive California proprietary and distribution rights. Plaintiff has also brought related tort claims for conversion and intentional interference with prospective economic advantage. Pursuant to FRCP 12(b)(6), several named defendants thereafter moved the Court to dismiss three of the four counts

alleged in the complaint. For the reasons discussed below, defendants motion is hereby DENIED.

## FACTUAL BACKGROUND

Plaintiff Don King Productions/Kingvision owned the exclusive California proprietary rights to distribute, promote, and exhibit the Chavez v. Lopez championship boxing match ("Program"), which was broadcast nationwide on December 10, 1994, via closed circuit TV. Only those subscribers paying the subscription fee were entitled to receive and exhibit the fight in their commercial establishments. Plaintiff retained investigators to monitor various restaurants and bars in California to determine whether the establishments were receiving and broadcasting the Program in violation of plaintiff's exclusive licensing agreement.

Plaintiff filed the instant action against those defendants which were unauthorized recipients of the program, and which broadcast the fight at their respective establishment for commercial gain. In its four-count complaint, plaintiff alleges causes of action based on violations of 47 U.S.C. § 605, 47 U.S.C. § 553, conversion, and interference with prospective economic advantage.

## LEGAL STANDARD

■ Dismissal is appropriate under Rule 12(b)(6) when plaintiff's complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Dodd v. Spokane County,* 393 F.2d 330, 334 (9th Cir. 1968). Unless the Court converts the Rule 12(b)(6) motion into a summary judgment motion, the Court may not consider material outside of the complaint. *Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981). The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Intake Water Co. v. Yellowstone River Compact Comm'n,* 769 F.2d 568, 569 (9th Cir.1985).

■ Rule 12(b)(6) dismissals are reviewed *de novo* by the appellate court, *Lindley v. General Electric Co.,* 780 F.2d 797, 799 n. 4 (9th Cir.1986), and are appropriate only in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). Denial of a motion to dismiss is not a final judgement and is not generally appealable. *Chelsea Neighborhood Ass'n v. United States Postal Service,* 516 F.2d 378, 390 (2d Cir.1976).

## DISCUSSION

### I. Count 2, 47 U.S.C. § 553(c)(1)

■ In Count 2 of its complaint, plaintiff alleges that defendants have violated 47 U.S.C. § 553, by engaging in the unauthorized reception, interception and exhibition of the Program at their respective commercial establishments. Defendants move to dismiss on the dual grounds that (1) § 553 does not authorize plaintiff to bring a cause of action because it is not a "cable operator;" and (2) allowing plaintiff to bring an action under both § 553 and 47 U.S.C. § 605 (Count 1), would render § 553 redundant, a result, they assert, that Congress could not have intended.

Defendants' contention that § 553 applies only to "cable operator[s]" contravenes the plain text of the statute, and they have offered no authority supporting their position. Section 553(a)(1) provides as follows:

No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator *or as may otherwise be specifically authorized by law.*

(emphasis added). In addition, § 553(c)(1) permits "any person aggrieved by any violation of subsection (a)(1)" to bring a civil action under this section.

Plaintiff contends that, as the exclusive licensor of pay-per-view cable program, it is authorized by law to grant permission to a subscriber to receive the cable signal, and thus is entitled to bring an action under section 553. Plaintiff's contention seems well warranted under the plain text of § 553(a)(1)

and (c). Defendants' position would require the Court to ignore the underlined portion of the quoted passage above and to hold that what Congress meant by "any person aggrieved" should be governed by the definition of "cable operator" in § 522(4), rather than by the definition of "person" Congress in fact promulgated.[1] In addition, although it appears that no court has expressly addressed this precise issue, other courts have allowed "persons" other than cable operators to bring an action under § 553. *See Storer Cable Comm. v. Joe's Place Bar & Restaurant,* 819 F.Supp. 593 (W.D.Ky.1993).

To support their position, defendants rely principally on the "fact" that (1) a cable operator has been a plaintiff in all the reported cases brought under § 553;[2] and (2) with respect to § 605, Congress recently redefined the term "any person aggrieved" to include "any person with proprietary rights in the intercepted communications by wire or radio," 47 U.S.C. § 605(d), while failing to similarly redefine this term for § 553. In the face of the statute's plain language, the Court is not persuaded that either fact constitutes authority for defendants' position.

■ Defendants' concern about the potential redundancy or overlap between § 553 and § 605 has a more solid foundation in the statute and caselaw, but has no applicability to the present motion. Partly because the civil remedy provisions of the two sections are nearly identical,[3] several courts have recently struggled with exactly what activity is covered by each section and whether a plaintiff may recover under both sections. *See generally Cablevision Systems Corp. v. Muneyyirci,* 876 F.Supp. 415 (E.D.N.Y.1994) (exhaustively reviewing legislative history and prior decisions); *Sykes, supra,* 997 F.2d at 1002. The courts are nearly unanimous in holding that § 553 deals specifically with the interception of *cable-borne* signals. *United States v. Lande,* 968 F.2d 907, 912 (9th Cir. 1992); *Sykes, supra,* 997 F.2d at 1008.

The courts are similarly unanimous in holding that § 605, which was originally enacted as part of the Communications Act of 1934 and broadly prohibits the interception of "radio communications," specifically prohibits illegal reception of cable and other programming carried by means of *airborne* satellite communications and facilities. *Lande, supra,* 968 F.2d at 912; *Muneyyirci, supra,* 876 F.Supp. at 424. The two major unresolved questions are whether § 605 also covers cable-borne communications, and, if so, whether a plaintiff may recover under both sections for the same wrongful activity. *See, e.g., Sykes, supra,* 997 F.2d at 1008–09; *Muneyyirci, supra,* 876 F.Supp. at 424–25; *American Cablevision of Queens v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y.1993).

The present case may ultimately require resolution of these questions. On defendants' motion to dismiss, however, the Court need not address them. Plaintiff has alleged that the defendants did "unlawfully intercept, receive, and thereafter exhibit" the Program. Taking these allegations as true, the Court may reasonably infer that some of the transmissions were intercepted by cable. Accordingly, prior to the Court's resolution of the potential overlap between §§ 553 and 605, plaintiff must be given the opportunity to determine through discovery whether the alleged illegal reception was via an airborne device or a cable-borne device. For the foregoing reasons, the Court denies defendants' motion to dismiss Count 2.

## II. Count 3, Conversion

■ Defendants move to dismiss Count 3, without leave to amend, on the grounds that plaintiff has failed to state a claim for conversion. Defendants argue that plaintiff's rights to the Program constitute intangible proper-

---

1. The Act defines person as "an individual, partnership, association, joint stock company, trust, corporation, or governmental entity." § 522(12).

2. *But see Storer, supra* (resolving in one order several unconsolidated cases in which plaintiff was not a cable operator with the lead case, in which plaintiff was a cable operator).

3. Section 553 was enacted in 1984, as part of the Cable Communications Policy Act of 1984. This Act also added nearly identical damages provisions to subsection (e) of § 605. In 1988, Congress substantially increased the monetary damages available under 605(e). *See International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1008 (2d Cir.1993).

ty and that conversion does not apply to intangible property. They also argue for dismissal on the grounds that plaintiff has failed to allege any actual damages.

Defendants correctly note that traditionally tangible personal property included only property that is visible and corporeal, having substance and body. *Roth Drugs, Inc. v. Johnson,* 13 Cal.App.2d 720, 734, 57 P.2d 1022 (1936); *see also Ballentine's Law Dictionary* 1255 (3rd ed.1969) (defining tangible property as "[p]roperty of material substance. Property which can be possessed physically, such as goods, wares, and merchandise"). Plaintiff counters that the property converted here, the "broadcast signal," is also tangible. Plaintiff fails to cite any authority for this position.

 Nonetheless, even assuming that the broadcast signals are intangible property, defendants' motion to dismiss must fail because, in appropriate instances, a valid claim may be brought for conversion of such property. In California, conversion has three elements: (1) ownership or right to possession of property, (2) wrongful disposition of the property right of another, and (3) damages. *G.S. Rasmussen & Assoc. v. Kalitta Flying Service,* 958 F.2d 896, 906 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). While conversion *generally* lies only where the property allegedly converted is tangible, courts in recent years have significantly relaxed this rule. In *A & M Records, Inc. v. Heilman,* 75 Cal.App.3d 554, 142 Cal.Rptr. 390, 400 (2d Dist.1978), *cert. denied,* 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118 (1978), for instance, the court of appeal considered whether or not conversion would lie for defendant's unauthorized sale of records duplicated from recordings manufactured and owned by plaintiff A & M Records. The court concluded that the "recorded performances [were] A & M Records' intangible personal property" and that the "misappropriation and sale of [such] intangible property of another without authority from the owner is conversion." *Id.* (citations omitted); *see also Kalitta Flying Service, supra,* 958 F.2d at 906–07 (relying on *A & M Records* in holding that conversion lies, under California law, for wrongful dispo-

sition of intangible property right in federal regulatory permit); *Television Signal Corporation v. Pete's 881 Club,* 1993 WESTLAW 84419 (N.D.Cal.1993) (rejecting defendant's motion to set aside default judgement for violations of 47 U.S.C. § 553 and 605, as well as conversion, on facts strikingly similar to those presented by the present case). Accordingly, plaintiff's alleged exclusive rights to distribute the Program in California satisfy the first element of conversion (i.e., that the plaintiff owns a right to possession of property).

 The second element is uncontested. With regard to the third element, defendants contend that plaintiff has failed to allege damages with sufficient specificity to survive dismissal. Defendants appear to have misconstrued the purpose and requirements for notice pleading. Plaintiff has described defendants' allegedly tortious action with sufficient specificity to put the defendants on notice as to the precise event being sued upon. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1201. Plaintiff has also alleged that it is entitled to statutory damages, in an amount up to $50,-000, for violations of §§ 553 and 605, and that defendants' allegedly tortious conduct has otherwise caused it "economic distress." In its prayer for relief on Count Three, plaintiff requests compensatory damages, as well as punitive and exemplary damages. Assuming plaintiff's allegations to be true and drawing all reasonable inferences in its favor, *NL Industries, supra,* 792 F.2d at 898, plaintiff has thus clearly alleged facts sufficient to establish the damages element of conversion.

Accordingly, defendants' motion to dismiss Count 3 should be denied.

*III. Count Four, Intentional Interference With Prospective Economic Advantage*

 The elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relation-

ship; (4) actual disruption of the relationship; and (5) proximately caused damages. *Blank v. Kirwan,* 39 Cal.3d 311, 216 Cal.Rptr. 718, 703 P.2d 58 (1985).

Defendants contend that plaintiff has not adequately pleaded any of these elements. While plaintiff's allegations on this Count are somewhat conclusory, the Court is unable to conclude "to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Intake Water Co., supra,* 769 F.2d at 569. In this regard, the Court notes that Congress has enacted legislation in part to alleviate the harm imposed upon the economic relationship between cable subscribers and cable providers by the type of broadcast piracy defendants allegedly committed. *See* H.R.Rep. 98–934, 98th Cong., 2d Sess.1984, *reprinted in* 1984 U.S.S.C.A.N. 4655, 4720. Accordingly, defendants' motion as to Count 4 is also denied.

## CONCLUSION

For the reasons discussed above, and good cause appearing, defendants' motion to dismiss is hereby denied.

**IT IS SO ORDERED.**