# United States Court of Appeals for the Federal Circuit

2006-1522

HIF BIO, INC.
and BIZBIOTECH CO., LTD.,

Plaintiffs-Appellees,

v.

YUNG SHIN PHARMACEUTICALS INDUSTRIAL CO., LTD.
(doing business as Yung Shin Pharmaceuticals and Yung Shin Pharm. Ind. Co. Ltd.),
YUNG ZIP CHEMICAL CO., LTD., FANG-YU LEE,
and CHE-MING TENG,

Defendants,

and

CARLSBAD TECHNOLOGY, INC.,

Defendant-Appellant,

and

FISH AND RICHARDSON P.C.,
and Y. ROCKY TSAO,

Defendants.

Bub-Joo S. Lee, Lee Anav Chung, LLP, of Los Angeles, California, for plaintiffs-appellees.

Glenn W. Rhodes, Howrey LLP, of San Francisco, California, for defendant-appellant. With him on the brief were Julie S. Gabler, Stephanie M. Byerly and Jesse D. Mulholland, of Los Angeles, California; and Richard L. Stanley, of Houston, Texas.

On Remand from: The Supreme Court of the United States

Judge Dean D. Pregerson

# United States Court of Appeals for the Federal Circuit

2006-1522

HIF BIO, INC.
and BIZBIOTECH CO., LTD.,

Plaintiffs-Appellees,

v.

YUNG SHIN PHARMACEUTICALS INDUSTRIAL CO., LTD.
(doing business as Yung Shin Pharmaceuticals and Yung Shin Pharm. Ind. Co. Ltd.),
YUNG ZIP CHEMICAL CO., LTD., FANG-YU LEE,
and CHE-MING TENG,

Defendants,

and

CARLSBAD TECHNOLOGY, INC.,

Defendant-Appellant,

and

FISH AND RICHARDSON P.C.,
and Y. ROCKY TSAO,

Defendants.

Appeals from the United States District Court for the Central District of California in case no. 05-CV-07976, Judge Dean D. Pregerson.

_____

DECIDED:   March 31, 2010

_____

Before MICHEL, <u>Chief Judge</u>, GAJARSA, <u>Circuit Judge</u>, and HOLDERMAN, <u>Chief District Judge</u>.<sup>*</sup>

_____

<sup>*</sup>     The Honorable James F. Holderman, Chief Judge, United States District Court for the Northern District of Illinois, sitting by designation.

GAJARSA, Circuit Judge.

This case is before this court on remand from the Supreme Court of the United States.  In our original decision, HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd., 508 F.3d 659 (Fed. Cir. 2007), we held that the Federal Circuit lacked appellate jurisdiction to review a district court's remand order that was based upon the district court's decision not to exercise supplemental jurisdiction.  See id. at 667.  The Supreme Court subsequently reversed our decision, and remanded the case back to us for further proceedings.  See Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1867 (2009). The sole remaining issue is whether the district court abused its discretion in remanding plaintiffs' amended complaint to California state court.  For the reasons set forth below, we hold that the district court did abuse its discretion because two of the remanded causes of action "arise under" 28 U.S.C. 1338(a), but the district court should have dismissed these purported causes of action for failure to state a claim for which relief can be granted.

**I.**

A.

We accept as true the facts alleged in plaintiffs' first amended complaint ("FAC"). See Wells v. United States, 420 F.3d 1343, 1348 (Fed. Cir. 2005).  These facts have previously been described and need not be recited in full again.  See HIF Bio, Inc., 508 F.3d at 660-62; see also HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd, No. CV 05-07976, 2006 WL 6086295, at *1-2 (C.D. Cal. June 09, 2006).  A brief summary of the operative facts, however, is appropriate.

In late 1999, Professors Jong-Wan Park ("Park") and Yang-Sook Chun ("Chun") began investigating the effect of a chemical, YC-1, on a protein complex known as HIF-1. A component of HIF-1 is expressed in human tumors and stimulates the growth of blood vessels within a tumor mass. Park and Chun hypothesized that YC-1 "could be used to inhibit the activity of HIF-1, which would have the effect of suppressing . . . the growth of blood vessels into animal tumors, and thereby kill[ing] the tumor by starving it of oxygen and nutrients." FAC ¶¶ 19-21.

Between 1999 and 2002, Park and Chun conducted laboratory experiments to confirm their hypothesis and submitted research papers disclosing their discovery to academic journals. See id. ¶¶ 22-26. On April 7, 2003, Park and Chun filed a United States patent application titled "Method for Inhibiting Tumor Angiogenesis and Tumor Growth," which "disclos[ed] their anti-angiogenic, anti-cancer application of YC-1." Id. ¶ 27. In July 2003, Park and Chun assigned their rights concerning YC-1 to Plaintiff BizBiotech Co., Ltd., which subsequently assigned the rights to Plaintiff HIF Bio, Inc. in February 2005. See id. ¶¶ 28-29.

While Park and Chun conducted their research, they also discussed their hypothesis with another scientist, Defendant Che-Ming Teng ("Teng"), who agreed to provide Park and Chun with the YC-1 necessary for their experiments. See id. ¶¶ 34-38. As an academic courtesy, Park and Chun provided Teng with information concerning their research including pre-publication drafts of academic papers disclosing the results of their laboratory experiments. See id.

Unbeknownst to Park and Chun, Teng disclosed the results of Park and Chun's research to Defendant Yung Shin Pharmaceuticals ("Yung Shin"), a Taiwanese drug

manufacturer.  Id. ¶¶ 40-45.  On March 29, 2002, without the consent or knowledge of Park and Chun, Teng filed a U.S. Provisional Patent application titled "Angiogenesis Inhibitors."  Id. ¶ 57.  The provisional identified Teng and Defendant Fang-Yu Lee ("Lee"), the president of Yung Shin, "as the inventor[s] of the novel anti-angiogenic, anti-cancer properties of YC-1."  In March 2003, Yung Shin filed a PCT application claiming priority to the U.S. provisional application.  See id. ¶ 86.

## B.

In September 2005, after discovering Teng, Lee, and Yung Shin's actions, HIF Bio and BizBiotech filed suit in Los Angeles Superior Court.  In addition to Teng, Lee, and Yung Shin, the suit named Carlsbad Technology, Inc. ("CTI"), a California corporation engaged by Yung Shin to commercialize the use of YC-1 as an anti-angiogenic, anti-cancer drug in the United States.  See id. ¶ 47.  The suit also named Yung Shin's patent counsel, Y. Rocky Tsao and Fish and Richardson, P.C., and an alleged Taiwanese co-conspirator, Yung Zip Chemical Co., Ltd.  See id.  In November 2005, CTI removed the action to the United States District Court for the Central District of California.  In March 2006, the plaintiffs filed their first amended complaint with the district court, asserting twelve causes of action.[1]

---

[1]    The first and second causes of action seek a declaratory judgment for ownership and inventorship, respectively, of "the INVENTION."  FAC ¶¶ 104-110.  The third cause of action asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68.  FAC ¶¶ 112-71.  The remaining causes of action are based respectively on slander of title, conversion, actual and constructive fraud, intentional interference with contractual relations and prospective economic advantage, negligent interference with contractual relations and prospective economic advantage, breach of implied contract, unfair competition and fraudulent business practices, unjust enrichment-constructive trust, and permanent injunction.  Id. ¶¶ 172-219.

Among other motions, CTI filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted CTI's motion, dismissed plaintiffs' RICO cause of action, and remanded the case to state court. See HIF Bio, Inc., 2006 WL 6086295, at *6. In remanding the case, the district court held that the first and second causes of action claimed "rights of inventorship and ownership of inventions [which] are valid state law claims." Id. at *4. It then declined to exercise supplemental jurisdiction and remanded those claims along with the remaining nine "state law claims" to California state court. Id.

CTI appealed the remand order to this court. This panel held that 28 U.S.C. § 1447(d) barred appellate review of a remand order based on declining supplemental jurisdiction and dismissed the appeal for lack of jurisdiction. See HIF Bio, Inc., 508 F.3d at 667. The Supreme Court subsequently reversed and remanded, holding that § 1447(d) did not bar appellate review in such circumstances. Carlsbad Tech., Inc., 129 S. Ct. at 1867.

## II.

We review for abuse of discretion the district court's decision not to exercise supplemental jurisdiction. See Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1374 (Fed. Cir. 1994) ("[T]he exercise of supplemental jurisdiction is within the discretion of the district court."). While the district court has discretion not to exercise supplemental jurisdiction over state law claims, it has no discretion to remand claims arising under federal law. See Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1328 (Fed. Cir. 1998) overruled in part on separate grounds in Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999); Gaming Corp. of Am. v.

Dorsey & Whitney, 88 F.3d 536, 542 (8th Cir. 1996) ("A district court has no discretion to remand a claim that states a federal question."); Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 787 (3d Cir. 1995) (same); Brockman v. Merabank, 40 F.3d 1013, 1017 (9th Cir. 1994) (same).

Whether the district court possessed jurisdiction is a question of law that this court reviews without deference. See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1335 (Fed. Cir. 2007); Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006). The district court's jurisdiction under § 1338(a) "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988).

A.     The Declaratory Judgment for Inventorship

The plaintiffs' second cause of action seeks a declaratory judgment that Park and Chun "were and are the first and true inventors/discoverers of the INVENTION." FAC ¶ 111. The amended complaint defines "INVENTION" as the discovery that "YC-1 had the potential to become the first anti-angiogenic, anti-cancer agent to HIF-1." Id. ¶ 22. According to plaintiffs, "an actual controversy has arisen" because the defendants "have made an open, public, and adverse claim that [Lee and Teng] are the inventors/discoverers of the INVENTION." Id. ¶ 109. The only open, public, and adverse claims to the INVENTION identified in the amended complaint are the

defendants' multiple pending patent applications which named Lee and Teng as inventors.  See id. ¶ 89; see also id. ¶¶ 47(c), 56-59, 61-62, 73-75.

In remanding the second cause of action, the district court noted that "Plaintiffs aver that they are not contesting patents or patent applications, but are instead seeking declaratory judgment on the issue of inventorship under state common law."[2]  HIF Bio, Inc., 2006 WL 6086295, at *4.  The district court then cited to a 1944 New Jersey District Court case, Bolhman v. Am. Paper, 53 F. Supp. 794 (D.N.J. 1944), and concluded that a right of inventorship is a "valid state law claim[]."  HIF Bio, Inc., 2006 WL 6086295, at *4.

The district court erred in concluding that the second cause of action presented a valid state law claim.  This court has held that "the field of federal patent law preempts any state law that purports to define rights based on inventorship."  Univ. of Colo. Found. v. Am. Cyanamid Co., 196 F.3d 1366, 1372 (Fed. Cir. 1999).  In so holding, the court stated:

> An independent inventorship standard under state law would likely have different requirements and give rise to different remedies than federal patent law.  A different state inventorship standard might grant property rights to an individual who would not qualify as an inventor under federal patent law, or might grant greater relief to inventors than is afforded by federal patent law.  Either situation might frustrate the dual federal objectives of rewarding inventors and supplying uniform national patent law standards.

Id.; see also Bd. of Regents, Univ. of Tex. Sys. v. Nippon Tel. & Tel., 414 F.3d 1358, 1363 (Fed. Cir. 2005) ("[T]his court has held that issues of inventorship, infringement,

---

[2]    Despite their averments to the contrary, the plaintiffs' complaint states: "PLAINTIFFS also allege, in the alternative, that jurisdiction with respect to the First and Second Claims of Relief is also proper under 28 U.S.C. § 2201(a) and 28 U.S.C. § 1338."  FAC ¶ 2.

validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under section 1338(a).").

The amended complaint defines the "INVENTION" solely in terms of the pending patent applications. See, e.g., FAC ¶ 86 (listing defendants' multiple patent applications that "falsely and fraudulently claim that [Lee and Teng] are the inventors/discovers of the INVENTION"); id. ¶ 89 (same). Therefore, the only possible theory upon which relief could be granted to the plaintiffs would be one in which determining the true inventor(s) of competing patent applications is essential. Because inventorship is a unique question of patent law, the cause of action arises under § 1338(a). See Christianson, 486 U.S. at 809 (holding that § 1338(a) jurisdiction extends to a cause of action in which "patent law is a necessary element"); Bd. of Regents, Univ. of Tex. Sys., 414 F.3d at 1363. The district court's contrary finding is erroneous.

However, because this dispute involves pending patent applications, the plaintiffs' requested relief – a declaration of the "true" inventor – is tantamount to a request for either a modification of inventorship on pending patent applications or an interference proceeding. See, e.g., Larson v. Correct Craft, Inc., 569 F.3d 1319, 1325 (Fed. Cir. 2009) ("We have treated requests for declaratory relief relating to inventorship as functional equivalents of actions formally brought pursuant to [35 U.S.C.] § 256."); Consol. World Housewares, Inc. v. Finkle, 831 F.2d 261, 263-65 (Fed. Cir. 1987) (equating a complaint which asked the district court "to declare the true inventor or inventors" to a request for an interference). Plaintiffs' requested relief can only be granted by the Director of the United States Patent and Trademark Office. See 35 U.S.C. §§ 116, 135(a). Section 116 authorizes the Director of the Patent and

Trademark Office to take certain actions concerning pending patent applications, but "plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications." Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1356 n.1 (Fed. Cir. 2004). Similarly, § 135(a) provides the PTO with the exclusive right to conduct an interference proceeding. See Consol. World Housewares, Inc., 831 F.2d at 265. While the question of who invented an invention disclosed in pending patent applications is a question of federal patent law, Congress, through §§ 116 and 135(a), has limited the avenues by which such inventorship can be contested.

Despite the statute's language, some district courts have held that § 116 provides a private right of action to challenge inventorship of a pending patent application. See, e.g., Kosower v. Gutowitz, No. 00 CIV. 9011, 2001 WL 1488440, at *7 (S.D.N.Y. Nov. 21, 2001); Heineken Technical Servs. v. Darby, 103 F. Supp. 2d 476, 479 (D. Mass. 2000). Other district courts, following our decision in Eli Lilly, have interpreted § 116 as foreclosing private actions in district court. See, e.g., Stevens v. Broad Reach Cos., L.L.C., 2006 WL 1556313, *4-*8 (W.D. Mo. 2006); Sagoma Plastics, Inc. v. Gelardi, 366 F. Supp. 2d 185, 190 (D. Me. 2005) (holding that a cause of action under § 116 invokes § 1338(a) jurisdiction, but is insufficient to state a claim under Rule 12(b)(6)).

To the extent Eli Lilly failed to resolve this issue, we expressly hold that § 116 does not provide a private right of action to challenge inventorship of a pending patent application. Once a patent issues, however, 35 U.S.C. § 256 provides a private right of action to challenge inventorship, and such a challenge arises under § 1338(a). Larson, 569 F.3d at 1324-25 ("There is no doubt that § 256 supplies such a valid basis for

federal jurisdiction: an action to correct inventorship under § 256 'aris[es] under' the patent laws for the purpose of § 1338(a)." (alterations in original)).

Given their proper import, §§ 116 and 135(a) preclude the district court from granting plaintiffs' requested relief – a declaration of the "true" inventor of a pending patent application. Accordingly, while the district court has jurisdiction over the cause of action, it should have dismissed the claim under Rule 12(b)(6) because no private right of action exists. See Litecubes, LLC v. N. Light Prods., Inc., 523 F.3d 1353, 1361 (Fed. Cir. 2008) ("[If] the complaint fails to allege a cause of action upon which relief can be granted, this 'failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'" (quoting Bell v. Hood, 327 U.S. 678, 682 (1946))).

## B.    The Remaining Causes of Action

The question remains, however, whether the remaining nine causes of action arise under the patent laws. Because these causes of action are not direct creatures of patent law, the district court had jurisdiction only if plaintiffs' "right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims." Christianson, 486 U.S. at 808-09. Moreover, "[i]f on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks, then the claim does not arise under those laws." Id. at 810 (alterations in original) (citations and internal quotation marks omitted). "[A] claim supported by alternative theories in the complaint may not

form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." Id.

CTI contends that the resolution of a patent law issue – inventorship – is necessary to resolve the remaining causes of action. As noted above, this court has held that "the field of federal patent law preempts any state law that purports to define rights based on inventorship." Univ. of Colo., 196 F.3d at 1372. Despite this broad language, this court has emphasized that a claim arises under the patent laws only if the inventorship issue is essential to the resolution of the claim. Bd. of Regents, Univ. of Tex. Sys., 414 F.3d at 1363; Thompson v. Microsoft Corp., 471 F.3d 1288, 1291-92 (Fed. Cir. 2006). Moreover, the appearance of "an alternative, non-patent theory" which may entitle the plaintiffs to their requested relief compels the conclusion that the cause of action does not arise under the patent laws. Christianson, 486 U.S. at 813; Am. Tel. & Tel. Co. v. Integrated Network Corp., 972 F.2d 1321, 1324 (Fed. Cir. 1992) ("Under Christianson, every theory of a claim as pled must depend on patent law if there is to be federal jurisdiction.").

The only other cause of action in which patent law is essential is plaintiffs' fourth cause of action – slander of title. Under California common law, the elements of slander of title are: publication, falsity, absence of privilege, and disparagement of another's title which is relied upon by a third party and which results in a pecuniary loss. See Smith v. Commonwealth Land Title Ins. Co., 177 Cal. App. 3d 625, 630 (1986). The complaint alleges that the defendants have slandered plaintiffs' title "to the INVENTION, and the claim of inventorship/discovery of the same." FAC ¶ 173. The "INVENTION" is the only property interest in which the plaintiffs allege they have title. Moreover, as

alleged by the plaintiffs, the only public disparagement defendants have made are statements to the PTO identifying Lee and Teng as inventors of the "INVENTION." See id. ¶¶ 86, 89. The complaint therefore sets forth only one theory which entitles plaintiffs to relief: plaintiffs must demonstrate that they invented the INVENTION first and that defendants' public statements of inventorship are false and caused the plaintiffs' damage. This sole theory requires a determination of who invented the "INVENTION." Because inventorship is indisputably a question of federal patent law, the fourth cause of action invokes federal jurisdiction, and the district court's decision to remand it was an abuse of discretion. See Hunter Douglas, Inc., 153 F.3d at 1328; Baker v. Kingsley, 387 F.3d 649, 656-57 (7th Cir. 2004) ("It is an abuse of discretion for a district court to remand a federal claim that is properly before it."). Yet, as discussed in Section II.A., § 116 precludes the district court from determining the true inventor of an invention disclosed in a pending patent application. Accordingly, while the cause of action invokes federal jurisdiction and should not have been remanded, the district court should dismiss it under Rule 12(b)(6) for failure to state a claim for which relief may be granted. See Litecubes, LLC, 523 F.3d at 1361.

Finally, patent law is not essential to plaintiffs' remaining causes of action for declaration of ownership, conversion, actual and constructive fraud, intentional interference with contractual relations and prospective economic advantage, negligent interference with contractual relations and prospective economic advantage, breach of

implied contract, and unfair competition and fraudulent business practices because each cause of action could be resolved without reliance on the patent laws.[3]

For example, patent law is not essential to plaintiffs' cause of action for conversion. Under California law, the elements of conversion are "(1) ownership or right to possession of property, (2) wrongful disposition of the property right of another, and (3) damages." Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995). Because plaintiffs could establish conversion by reference to the defendants' alleged misappropriation of "experiments, pre-publication experimental data, and non-public, pre-publication drafts of papers," an alternative, non-patent theory exists which entitles plaintiffs to relief. See FAC ¶ 149. Accordingly, the cause of action for conversion does not arise under § 1338(a). See Christianson, 486 U.S. at 813; Am. Tel. & Tel. Co., 972 F.2d at 1324.

The cause of action for intentional interference with contractual relations and prospective economic advantage also does not arise under § 1338(a). Intentional interference with contractual relations and prospective economic advantage requires proof of "(1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) proximately caused damages." Don King Prods./Kingvision, 911 F. Supp. at 423-24. While relevant, a determination of inventorship is not essential to any of the

___

[3] The amended complaint also includes a cause of action for "Permanent Injunction." FAC ¶¶ 215-19. While written as a separate cause of action, it is more properly understood as a request for injunctive relief to remedy one of the other causes of action. Accordingly, it cannot serve as a basis for jurisdiction.

five elements of intentional interference with contractual relations and prospective economic advantage because the "intentional acts on the part of the defendant[s]" could consist of their alleged misappropriation of "experiments, pre-publication experimental data, and non-public, pre-publication drafts of papers." See, e.g., Bd. of Regents, Univ. of Tex. Sys., 414 F.3d at 1363-64 (holding that patent law was not essential to a claim for tortious interference); FAC ¶ 149. The same is true for the closely related cause of action for negligent interference with contractual relations and prospective economic advantage. See J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 806 (1979).

Inventorship is likewise not essential to the causes of action for fraud, unfair competition, breach of implied contract, or ownership. With respect to fraud, plaintiffs' complaint alleges that the defendants made continued promises of collaboration which induced plaintiffs into providing non-public and valuable research data to defendants. FAC ¶¶ 40-50, 181-84. As pled, these non-patent related facts could be sufficient to establish fraud. See Small v. Fritz Cos., Inc., 65 P.3d 1255, 1258 (Cal. 2003) ("The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (citations and internal quotations marks omitted)). Similarly, plaintiffs' claim for unfair competition and fraudulent business practices could be resolved solely on this theory of fraud which does not require reliance on patent law. See Cal. Bus. & Prof. Code § 17200 (West 2008) (defining unfair competition as including "any unlawful, unfair or fraudulent business act or practice"). Next, plaintiffs' cause of action for breach of implied contract does not arise under § 1338(a) because it

could be resolved by reference to the defendants' alleged failure to keep their promises not to misappropriate or commercialize the INVENTION. See FAC ¶ 38; Uroplasty, Inc. v. Advanced Uroscience, Inc., 239 F.3d 1277, 1280 (Fed. Cir. 2001) (holding that breach of contract claims did not arise under § 1338 because the claims could be adjudicated "without resolving a substantial patent issue"); Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979) ("State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable . . . ."). Finally, the ownership dispute could be resolved without a determination of who invented the INVENTION. The amended complaint's allegation that the defendants' conduct gave rise to an implied contract between the parties could form the basis for resolving the ownership dispute because that implied contract could dictate which party owns the INVENTION. See Consol. World Hardwares, Inc., 831 F.2d at 265 ("That a contract action may involve a determination of the true inventor does not convert that action into one 'arising under' the patent laws."). Accordingly, the request for a declaration of ownership does not arise under § 1338(a).

Plaintiffs' eleventh cause of action – "Unjust Enrichment-Constructive Trust" – deserves specific analysis to avoid creating any confusion in our precedent. In University of Colorado, this court found the issue of inventorship to be essential to a cause of action for unjust enrichment. See 196 F.3d at 1372. In that case, which did not address § 1338(a) jurisdiction, the plaintiff did not allege any alternative, non-patent facts which would entitle it to relief. See id. ("[T]he University's fraudulent nondisclosure and unjust enrichment claims depend on the Doctor's status as inventors."). Here, conversely, the amended complaint broadly alleges that the defendants' "unauthorized

taking and use of property and assets rightfully belonging to Plaintiffs" constituted unjust enrichment.  FAC ¶ 211.  Again, an inventorship determination could be relevant to the cause of action, but, unlike in University of Colorado, an alternative, non-patent theory in which the misappropriated "property and assets" consist of plaintiffs' "experiments, pre-publication experimental data, and non-public, pre-publication drafts of papers" exists.  See Christianson, 486 U.S. at 810; Thompson v. Microsoft Corp., 471 F.3d 1288, 1291-92 (Fed. Cir. 2006) (holding that a claim for unjust enrichment did not arise under the patent laws because resolution of an inventorship issue was not essential to the claim).  Therefore, plaintiffs' eleventh cause of action also does not arise under § 1338(a).

## C.    Abuse of Discretion

Because the second and fourth causes of action arise under § 1338(a), the district court abused its discretion in remanding those causes of action to state court. See Hunter Douglas, Inc., 153 F.3d at 1328; Baker, 387 F.3d at 656-57.  However, on remand the district court should dismiss both causes of action under Rule 12(b)(6) because plaintiffs have failed to state a claim upon which relief can be granted. Additionally, because the remaining state law claims do not arise under federal law, the district should remand them to California state court.

## CONCLUSION

For the foregoing reasons, we reverse the district court's remand of the First Amended Complaint, and remand for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

Each party shall bear its own costs for this appeal.