Billings, Thomas P., J.
This is an action for misappropriation of trade secrets and confidential information. The plaintiff (“MKS”) asserts claims for breach of contract (Counts I-VI), breach of the covenant of good faith and fair dealing (VIII), misappropriation of confidential information and trade secrets (IX), breach of the duty of loyalty (X), conversion (XI), interference with advantageous relations (XII), unjust enrichment (XIII), intentional misrepresentation (XIV), and violation of Chapter 93A (XV). It seeks money damages, multiple damages and attorneys fees on the Chapter 93A claim, and, in Count VII, a declaration that its contractual confidentiality, non-compete, invention disclosure and non-solicitation covenants with the defendants are valid and binding.
The defendants have moved to dismiss the Complaint for failure to state a claim, and for failure to join an indispensable party. For the reasons that follow, the motion to dismiss is DENIED.
FACTS
The Complaint alleges that the individual defendants are former employees of the plaintiff (“MKS”); that they left and founded the corporate defendant (“Emphysys”) as a technology consulting firm; that the defendants thereafter did consulting work for MKS; that both as employees and as consultants the defendants were bound by confidentiality and non-competition covenants (among others); and that they *347 misappropriated trade secrets and confidential business information belonging to MKS.
The defendants’ misconduct came to light when MKS learned, in February of 2012, that Emphysys had filed three patent applications on or about August 6, 2010, while it was still under contract with MKS. These patent applications are a replica of an invention[1] developed by Xing Chen, an employee of a company that MKS subsequently acquired along with the invention. “Not only were the defendants prohibited from appropriating Chen’s 1997 invention for their own use,” the Complaint continues, “but under the express terms of the Master Agreement, MKS has sole and exclusive rights to the invention that has been patented (sic).”[2] Significantly, however, for purposes of the present motion, the prayers for relief stop short of seeking an adjudication that MKS is entitled to ownership of the patents, if the applications are successful.[3]
The defendants have responded, in part, with a factual correction, to which the plaintiff, at oral argument, acceded: the patent applications are actually being prosecuted by LAM Research Corporation (“LAM”), to which the defendants assigned the applications before they were filed, and list as inventors the five individual defendants and a sixth individual, an employee of LAM.[4] The patent application publications — Nos. US 2012/0034394 Al, US 2012/0031875 Al, and US 2012/0035766 A1 — are included with the motion papers, and I take judicial notice of them.[5]
DISCUSSION
In their motion to dismiss, the defendants assert (a) that the complaint fails to state a claim because the plaintiffs’ causes of action necessarily turn on determination of who is the real “inventor” of the subjects of the pending patent applications, and are thus preempted by federal law and beyond the jurisdiction of the state courts, and (b) even were this action allowed to proceed, LAM would have to be joined as an indispensable party. These arguments are considered in turn.
A. Federal Preemption and Jurisdiction
The Founders conferred on the Congress the power “(t]o promote the progress of science and useful arts” by establishing a system for patents and copyrights. U.S. Constitution, Art. I, sec. 8.8. This grant, and Congress’s exercise of it, naturally have ramifications both for the reach of substantive state law, and for the respective jurisdiction of state and federal courts.
Substantively, federal patent law is preemptive of state law on patent issues, including the question of who has the rights to a patented or patentable invention. Title 35 of the United States Code, sections 116 and 135(a), assign to the U.S. Patent and Trademark Office the task of adjudicating “inventorship” of technology that is subject to a patent application. These sections have been interpreted to mean that “the field of federal patent law preempts any state law that purports to define rights based on inventorship.” University of Colorado Foundation v. American Cyanamid Co., 196 F.3d 1366, 1372 (Fed.Cir. 1999). As the Federal Circuit explained,
An independent inventorship standard under state law would likely have different requirements and give rise to different remedies than federal patent law. A different state inventorship standard might grant properly rights to an individual who would not qualify as an inventor under federal patent law, or might grant greater relief to inventors than is afforded by federal patent law. Either situation might frustrate the dual federal objectives of rewarding inventors and supplying uniform national patent law standards.

Id.

Procedurally, 28 U.S.C. § 1338(a) assigns to the federal district courts “original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . Such jurisdiction (is) exclusive of the courts of the states in patent . . . cases.” As the Supreme Court has interpreted this section, the federal courts have exclusive jurisdiction over any action in which a well-pleaded complaint establishes either that (1) federal patent law creates the cause of action, or (2) “the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.” Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988).
There is a third, potentially relevant principle that has more to do with the orderly administration of the patent system than with federalism: neither a state nor a federal court has the power “to issue a declaratory judgment naming the correct inventors of a pending patent.” Sagoma Plastics, Inc. v. Gelardi, 366 F.Sup.2d 185, 187 (D.Me. 2005). “While the patent is still in the process of gestation, it is solely within the authoriiy of the Director [of the U.S. Patent and Trademark Office].” E.I. DuPont de Nemours & Co. v. Okuley, 344 F.3d 578, 584 (6th Cir. 2003). The federal courts “are empowered to correct any error that the Director may have committed,” but no court may entertain a collateral attack while the application is pending. Id.; accord, Fin Brand Positioning, LLC v. Take 2 Dough Prods., Inc., 758 F.Sup.2d 37, 41 (D.N.H. 2010).
None of these three principles, however, bars MKS from pursuing the state-law claims it has asserted in this case, or from bringing them in state court. Its rights in its confidential information do not depend on the federal law of “inventorship” or on any state-law analog. “A trade secret may consist of any formula, pattern, device or compilation of information which is used in one’s business, and which gives him an opportuniiy to obtain an advantage over competitors who do not know or use it.” J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736 (1970), *348 quoting from Restatement of Torts §757 comment b. Whether information qualifies as a protectable trade secret depends on six factors:
(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and its competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 49 n.5 (Mass. 1998), citing Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972), S.C., 377 Mass. 159 (1979). “Inventorship” is neither a necessary nor a sufficient condition of protection under state law.[6]
Nor do the issues in this case arise under federal patent law, or depend on resolution of any question of federal patent law, such that the federal courts would have exclusive jurisdiction. “A trade secret need not be a patentable invention”; nor does the patentability of an idea compel the taking out of a patent or prevent the holder from keeping it a secret. J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 738 (1970); see Stark v. Advanced Magnetics, Inc., 50 Mass.App.Ct. 226, 236 (2000), and contrast Magnamagic Ltd. Partnership v. Flexcon Co., Inc., 2010 WL 5783067 (Mass.Super. 2010; Agnes, J.) [27 Mass. L. Rptr. 607] (Chapter 93A claim that the defendant “engaged in inequitable conduct before the PTO by knowingly and intentionally failing to disclose the prior art in its patent application for anticompetitive purpose” could not proceed in state court).
Finally, this action is not an effort to tell the Director of the Patent and Trademark Office his business, as in the Sagoma Plastics and Fin Brand Positioning cases. This is not to say that MKS could not have patent rights in what it says the defendants misappropriated. If it does, and if it wishes to assert them, it may do so by way of an interference proceeding in the USPTO. See 35 U.S.C. §§ 102(g), 135. If it chooses instead to remain on the sidelines, it runs the risk that LAM will obtain the patent, which carries a statutory presumption of validity, 35 U.S.C. §282, thus making it more difficult to challenge the patent post hoc and potentially precluding MKS from unlicensed use of the patented technology.
This is not, however, a patent case; it is a contract and tort action concerning the relations between a principal and its employees and contractors. These are claims over which neither the Patent and Trademark Office nor the federal courts have subject matter jurisdiction. If they may not be heard in a state court, they do not exist.
As one state court has observed, “just because a patent is in the vicinity does not inevitably and invariably bring the controversy within the ambit of exclusive federal jurisdiction.” Caldera Pharmaceuticals, Inc. v. Regents of University of California, 205 Cal.App.4th 338, 355 (2012) (holding that plaintiffs claim that the University had failed to file applications for patents on technology developed by plaintiff, as required by the parties’ Exclusive Patent Licensing Agreement, was a state-law contract/business tort case properly brought in state court). As in Caldera Pharmaceuticals, the dispute in this case “is based not on federal patent law, but on the performance of the contractual relationship the parties voluntarily assumed ... [it is] about ‘the defendants’ alleged failure to keep their promises.’ ” Id. at 370, quoting HIF Bio v. Yung Shin Parmaceuticals Industrial, 600 F.3d 1347, 1356 (Fed. Cir. 2010).[7] It is the stuff of state substantive law, and the business of the state courts.
B. Indispensable Party
A party is indispensable
if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
Mass.R.Civ.P. 19(a).
LAM is not an indispensable party to this case. All of the relief sought in the Complaint can be awarded without LAM’s participation, and it does not have and has not claimed any interest in this private dispute between an employer/principal and its former employees/contractors, in which MKS seeks only monetary relief and a declaration as to the validity and enforceability of the contracts it had with the defendants.
ORDER
For the foregoing reasons, the defendants’ Motion to Dismiss is DENIED.

 The invention is titled, “Inductively-Coupled Toroidal Plasma Source Built into Lid of Chamber as High Density Plasma Source.” Chen worked for a company called ASTeX which MKS acquired in 2001, four years after Chen’s invention.

 This, it appears, is a misspeak: the three patent applications are still pending.

 The Complaint also alleges that “defendant Shajii solicited an additional MKS employee to join Emphysys in direct violation with (sic} both Emphysys’ Master Agreement with MKS as well as Shajii’s Agreement with MKS.”

 Plaintiff s counsel represented at oral argument that MKS first learned of the misappropriation when it read the publications, and that it knows of nothing else the defendants may have taken.

 See Coinstar, Inc. v. Coinbank Automated Systems, Inc., 988 F.Sup. 1109, 1114 (N.D.Cal. 1998); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

 Nor would the defendants necessarily be disqualified as “Inventors” under patent law if their work depended in part— even in large part — on information obtained from another. “One must contribute to the conception to be an inventor.” In re Hardee, 223 USPQ 1122, 1123 (Comm’r Pat. 1984). Contribution, however, is all that is required; ‘ji]n arriving at a conception [the inventor] may consider and adopt ideas and materials derived from many sources.” Morse v. Porter, 155 USPQ 280, 283 (Bd. Pat. Inter. 1965).

 The HIF Bio case similarly held, in a case of misappropriated trade secrets, that patent law and the concept of "inventorship” were “not essential to the plaintiffs’... causes of action for declaration of ownership, conversion, actual and constructive fraud, intentional interference with contractual relations and prospective economic advantage, breach of implied contract, and unfair competition and unfair business practices because each cause of action could be resolved without reliance on the patent laws.” 600 F.3d at 1355-56. The plaintiffs prayer in that case for “a declaration of the ‘true’ inventor of a pending patent application" under state law principles, by contrast, was preempted by federal patent law. Id. at 1353. MKS, as noted above, seeks no such declaration in this case.