**Rel: 12/5/14**

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2014-2015

————————————

### 1121415

————————————

**Victor Deng and DM Technology & Energy, Inc.**

**v.**

**Clarence "Buddy" Scroggins and Complete Lighting Source, Inc.**

**Appeal from Jefferson Circuit Court, Bessemer Division (CV-07-0563)**

BRYAN, Justice.

Victor Deng and DM Technology & Energy, Inc. ("DM"), appeal from a judgment based on the jury's verdict entered by the Jefferson Circuit Court in favor of Clarence "Buddy" Scroggins and Complete Lighting Source, Inc. ("Complete

1121415

Lighting"), on their claims against Deng and DM alleging breach of contract and fraud. We affirm the judgment as to the breach-of-contract claim but reverse the judgment as to the fraud claim, and we remand the case to the circuit court for a new trial on that claim.

Facts and Procedural History

Scroggins is the owner of Complete Lighting, an Atlanta-based company that sells lighting equipment, including lamps, ballasts, and fixtures. Deng is the owner of DM, a California-based company that also sells lighting equipment. Scroggins began to work as a sales representative for DM in late 2004 or early 2005. Scroggins testified that the parties originally intended for Scroggins to sell DM's fluorescent products but that he had difficulty selling those products because DM did not have the necessary stock to fill the orders he generated.

As part of its business, Complete Lighting sold lighting equipment to owners of aquariums. Scroggins became aware of concerns expressed by aquarium owners related to high energy consumption, costs, and heat caused by existing aquarium-lighting fixtures. Scroggins testified that, in response to

2

those concerns, he developed an idea for an LED lamp tube that could be used in aquariums. Scroggins did not have the ability to manufacture the LED lamp tube, so he communicated his idea to Deng, who owned a company in China with manufacturing capabilities. Deng developed a prototype of the LED lamp tube, which he sent to Scroggins. Scroggins testified that the first prototype was "not even close" to his original idea. He discussed his concerns with Deng, who, according to Scroggins, sent him a second prototype that was better. However, Scroggins still was not satisfied with the prototype. Scroggins testified that the third prototype Deng sent him was something that Scroggins thought was marketable.

While the prototype for the LED lamp tube was in development, a friend of Scroggins's, Skip Busby, suggested an alternative use for the LED lamp tubes in display counters in retail businesses, such as Wal-mart Stores, Inc. ("Wal-mart"). Busby arranged a meeting for Deng and Scroggins in Bentonville, Arkansas, with one of Wal-mart's suppliers, Leggett & Platt, Inc., to demonstrate the LED lamp tubes. In July 2006, while in Bentonville but before the meeting with Leggett & Platt, Scroggins and Deng executed an agreement that

1121415

had been drafted by Scroggins ("the exclusivity agreement").
The exclusivity agreement provided, among other things:

    "1.  [DM] gives the right to sell to Complete
    Lighting exclusively for one year from the signed
    date.  At the end of this term, said contract will
    be reviewed and re-negotiated if needed.

    "2.  [DM] guarantees 5% commission for present
    and future sales from any and all customers
    [Complete Lighting] brings of the LED [lamp] [t]ube.

    "3.  [DM] guarantees to deliver product in
    quality condition.

    "4.  [DM] guarantees not to sell [to]
    customer[s] direct[ly] without commissions to
    [Complete Lighting] under any circumstances."

As a result of their meeting with Leggett & Platt, Gabriel Logan, a limited liability company that sells to Wal-mart through Leggett & Platt, expressed interest in the LED lamp tube and, in November 2006, purchased 25 samples, or $88,940.22 worth of product, from DM.  The samples were to be used in a test run in stores.  Scroggins testified that he had received very positive feedback from Wal-mart and "Zales," presumably Zales Jewelry Company, to whom Scroggins testified he had sent a sample.

From July 2006 to March 2007, there were no further sales of LED lamp tubes.  Scroggins testified that he had trouble

4

getting working samples from DM that could be delivered to customers.  Another difficulty in selling the LED lamp tubes was that the drivers in the samples kept burning out.[1]  In August 2006, Deng applied for a patent for the LED lamp tube in the United States.  Deng was listed as the sole "inventor" of the LED lamp tube.  Scroggins was not named in the patent application.

In March 2007, Deng sent Scroggins a letter, stating:

> "It is with regret that we find the need to terminate the contract of 'exclusiveness' regarding the LED Lamp Tubes as manufactured by us.  It is our belief that the conditions of said agreement have not been fulfilled.  Over an eight month period only one customer has been produced.  As with you, we also believed the future potential of this customer could have been vastly significant.  However, [DM] has invested a large amount of dollars for this product's R[esearch] & D[evelopment].  And unfortunately, to help continue this new product's growth, DM feels it need[s] to have more sales/customers by this time.

> "This termination will be effective March 31, 2007.  All commissions accrued up to that date will be paid as per our agreement."

Deng did not pay Scroggins a commission on the November 2006 sale to Gabriel Logan.

---

[1]It was later discovered that the problem was not in the design of the LED lamp tube but in the LED lighting itself, which was not manufactured by DM.

1121415

In April 2007, Scroggins and Complete Lighting sued Deng, DM, and BARTCO Lighting ("BARTCO"), a company to whom Deng and DM had sold some "Retrofit LED tubes." Scroggins and Complete Lighting alleged in the complaint:

"14. Upon information and belief, and prior to the ... unilateral termination of the [exclusivity agreement], DM Technology and Deng and BARTCO entered into a conspiracy to not only defraud Scroggins and Complete Lighting of the proprietary LED Lamp Tubes technology they created, but also any and all future commissions or sales associated with the LED Lamp Tubes.

"15. Upon information and belief, and in furtherance of the conspiracy, DM Technology and Deng entered into an agreement with BARTCO wherein BARTCO would [sell] the LED Lamp Tubes that were created by Scroggins and Complete Lighting and subsequently manufactured by DM Technology and Deng.

"16. Scroggins and Complete Lighting also completed sales to Gabriel Logan and are owed back commissions for sales.

"17. Scroggins and Complete Lighting are owed past and future commissions on sales of all LED Lamp Tubes by DM Technology and Deng and BARTCO.

"18. Upon information and belief, DM Technology and Deng have sold BARTCO over 2.8 million dollars of LED Tubes, for which Scroggins and Complete Lighting are owed a five percent (5%) commission of $140,000.00.

"19. Upon information and belief, DM Technology, Deng and BARTCO have continued the conspiracy by continuing to market the LED Lamp

6

Tube[s], by effectuating further sales of LED Lamp Tubes."

Scroggins and Complete Lighting sought an injunction preventing Deng, DM, and BARTCO from manufacturing, making, or selling the LED lamp tubes. They also sought damages for, among other claims, breach of contract and fraud. BARTCO was eventually dismissed from the case and is not a party to this appeal.

The action was removed to federal court but was remanded to the Jefferson Circuit Court because of "fatal procedural defects in the removal." Deng and DM moved the circuit court to dismiss the claims against them, arguing that the court did not have jurisdiction over them. The circuit court initially granted their motion but later set aside the dismissal on Scroggins and Complete Lighting's motion to alter, amend, or vacate the judgment.

In March 2013, the case was tried before a jury. At trial, questions were posed regarding an alleged promise by Deng to include Scroggins's name on the patent for the LED lamp tubes. Scroggins testified that he and Deng had discussed patenting the idea for LED lamp tubes but did not discuss a time frame for securing that patent.

7

1121415

Prior to trial, Scroggins had testified by affidavit in June 2007 and again in May 2008 that

> "[a]pproximately a year to a year and a half into th[e] process [of developing the LED lamp tube] Deng suggested that the LED light needed to be patent[ed].
>
> "I did not have the funds available to pay for the patent, so we agreed that the patent would be submitted in DM Technology's name.
>
> "It was during this time period that I became concerned that once the technology was patented there would be nothing to prevent Deng from stealing my idea.
>
> "Therefore, in exchange for the patent being issued to DM Technology's name instead of mine, we agreed that I would be the exclusive agent throughout the United States to [sell] the LED Lamp Tubes [that] DM Technology manufactured. We subsequently entered into [the exclusivity] agreement."

However, Scroggins testified at trial that the exclusivity agreement was executed in exchange for allowing Deng to put his name as well as Scroggins's name on the LED-lamp-tube patent. Scroggins further testified at trial that the exclusivity agreement was "a temporary thing while we worked on ... getting [me] on the patent, whatever we had to do. It was more of a short-term protection for me." Scroggins also testified that if Deng had not agreed to

8

include him on the patent, Scroggins "would have looked for another source" to manufacture the LED lamp tube.

Scroggins testified that around November 2006 he learned that a patent application for the LED lamp tube was pending in China. The Chinese patent application did not name Scroggins as an inventor. Scroggins testified that he called Deng about the omission and that Deng assured him that this was the "standard process" in China and that it "would not affect [their] relationship and the plans that [they] had," presumably related to securing the United States patent. Scroggins also testified that Deng told him the application for the patent in China was unrelated to the United States patent application.

Deng testified at trial that he did not include Scroggins's name on the United States patent application because the LED lamp tube was not Scroggins's idea. Deng testified that Scroggins was a sales representative and that he, Deng, "never had an intent to put Buddy Scroggins'[s] name on th[e] patent" because "[i]t [was] not [Scroggins's] business."

9

At the close of Scroggins and Complete Lighting's case-in-chief, Deng and DM, on the one hand, and Scroggins and Complete Lighting, on the other, separately moved for a judgment as a matter of law ("JML"), which motions were denied. They renewed those motions at the close of all the evidence. The circuit court denied the renewed motions for a JML as well and submitted only the breach-of-contract and fraud claims to the jury. The breach-of-contract claim was based on Deng and DM's alleged failure to pay Scroggins the commission owed on the sale to Gabriel Logan, and the fraud claim was based on Deng's alleged fraudulent promise to put Scroggins's name on the patent. The jury returned a verdict in Scroggins and Complete Lighting's favor on both claims and awarded them $4,750 in compensatory damages on the breach-of-contract claim, $1.5 million in compensatory damages on the fraud claim, and $1.5 million in punitive damages on the fraud claim.[2]

---

[2]Deng and DM argue that the $1.5 million in compensatory damages was actually an award for "nominal compensatory damages." Deng and DM's brief, at 28. Scroggins and Complete Lighting argue that the verdict form identified those damages as "Nominal/Compensatory" damages and that the jury clearly chose compensatory rather than nominal damages. Deng and DM cite no evidence to the contrary. The circuit court described the damages awarded for the fraud claim as "compensatory

1121415

On May 1, 2013, Deng and DM filed a motion, renewing their request for a JML or, in the alternative, requesting a new trial. Scroggins and Complete Lighting opposed Deng and DM's motion and moved the circuit court to strike evidence attached to Deng and DM's motion related to an allegedly fake 2003 Chinese patent for the LED lamp tubes and unauthenticated tax returns for DM. They also moved for sanctions against Deng and DM. After a hearing, the circuit court entered an order denying Deng and DM's motion for a JML or, in the alternative, a new trial and also denying Scroggins and Complete Lighting's motion for sanctions. The circuit court went on to grant Scroggins and Complete Lighting's motion to strike evidence of the 2003 Chinese patent and the unauthenticated tax returns. The circuit court also entered a separate order awarding Scroggins and Complete Lighting court costs in the amount of $4,133.44. Deng and DM have

---

damages" in its judgment based on the jury's verdict, and Deng and DM refer to them as "compensatory damages" in their renewed motion for a JML or, in the alternative, for a new trial. In fact, they raise the argument that the damages are "nominal compensatory damages" for the first time on appeal. "'An issue may not be raised for the first time on appeal.'" Allsopp v. Bolding, 86 So. 3d 952, 962 (Ala. 2011).

11

1121415

appealed only the denial of the motion for a JML or a new trial.

Issues

Deng and DM allege that the circuit court erred in denying their motion for a JML or, in the alternative, a new trial because, they argue, (1) the fraud claim is preempted by federal patent law and, therefore, the circuit court did not have jurisdiction over that claim; (2) Scroggins and Complete Lighting changed the basis of their fraud claim during the course of the trial, which, Deng and DM argue, constituted "trial by ambush"; (3) the fraud claim was based on contradictory testimony by Scroggins; (4) Scroggins and Complete Lighting did not present evidence of several elements of a fraud claim; (5) the compensatory-damages award for the fraud claim was based on speculative evidence; (6) the punitive-damages award was not supported by clear and convincing evidence; and (7) the punitive-damages award was the result of prejudice, bias, passion, or other improper motive. Deng and DM also argue, in the alternative, that the punitive-damages award is excessive and that they are entitled to a remittitur of those damages.

12

## Standards of Review

"When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So. 2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So. 2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). ... In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So. 2d 1126 (Ala. 1992)."

Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So. 2d 1143, 1152 (Ala. 2003).

With regard to a motion for a new trial, this Court has stated:

"'"It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error."'"

Baptist Med. Ctr. Montclair v. Whitfield, 950 So. 2d 1121, 1126 (Ala. 2006) (quoting Curtis v. Faulkner Univ., 575 So. 2d 1064, 1065-66 (Ala. 1991), quoting in turn Kane v. Edward J. Woerner & Sons, Inc., 543 So. 2d 693, 694 (Ala. 1989), quoting in turn Hill v. Sherwood, 488 So. 2d 1357, 1359 (Ala. 1986)).

> "Furthermore, a jury verdict is presumed to be correct, and that presumption is strengthened by the trial court's denial of a motion for a new trial. In reviewing a jury verdict, an appellate court must consider the evidence in the light most favorable to the prevailing party, and it will set aside the verdict only if it is plainly and palpably wrong."

Delchamps, Inc. v. Bryant, 738 So. 2d 824, 831 (Ala. 1999) (citations omitted).

## Analysis

As a threshold matter, we note that Deng and DM allege no error in either the jury's verdict or the circuit court's judgment as they relate to the breach-of-contract claim or the compensatory-damages award related to that claim. "'An argument not made on appeal is abandoned or waived.'" Muhammad v. Ford, 986 So. 2d 1158, 1165 (Ala. 2007) (quoting Avis Rent A Car Sys., Inc. v. Heilman, 876 So. 2d 1111, 1124 n.8 (Ala. 2003)). Therefore, the judgment is affirmed insofar as it relates to Scroggins and Complete Lighting's breach-of-

14

contract claim, and the remaining arguments will be addressed only as they relate to the fraud claim.

Deng and DM argue that the circuit court "lacked subject matter jurisdiction over the case because [Scroggins and Complete Lighting's] claims attacked the validity and ownership of a patent." Deng and DM's brief, at 12. The United States Code, 28 U.S.C. § 1338(a), provides, in pertinent part, that "[t]he [federal] district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents" and that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents."[3]

Deng and DM argue that, "prior to trial, Scroggins maintained that the LED Lamp Tube was his idea. Scroggins also testified that he and Deng agreed that the patent would be submitted in DM Technology's name, only. In return, Scroggins would be the exclusive agent throughout the United States to sell the LED Lamp Tube." Deng and DM's brief, at

---

[3]Again, we note that the breach-of-contract claim did not relate to the patent for the LED lamp tube, but to Deng and DM's alleged failure to pay Scroggins and Complete Lighting the commission owed under the exclusivity agreement. Thus, our analysis of this jurisdiction issue is limited to the fraud claim.

14. However, Deng and DM argue, at trial "Scroggins[ and Complete Lighting's] counsel told the jury that the case centered on who actually invented the LED Lamp Tube," id., and "[Scroggins] testified that Deng had obtained the patent of Scroggins's idea without Scroggins's knowledge or permission." Id., at 15. Deng and DM argue that "[t]his ... changed [Scroggins's] case from one based upon the [exclusivity agreement] to one attacking the validity of the patent itself." Id. Therefore, Deng and DM argue, Scroggins and Complete Lighting's fraud claim is federally preempted under § 1338(a) and the circuit court did not have jurisdiction over that claim.

Deng and DM also cite the statement from University of Colorado Foundation, Inc. v. American Cyanamid Co., 196 F.3d 1366, 1372 (Fed. Cir. 1999), that "the field of federal patent law preempts any state law that purports to define rights based on inventorship" and argue that,

> "[i]n returning a verdict in Scroggins[ and Complete Lighting's] favor on the fraud count, the judgment necessarily had to have determined that Scroggins, not DM Technology, was the 'inventor' of the LED Lamp Tube. In doing so, the jury stepped into a field that is within the exclusive jurisdiction of the federal courts, rendering the judgment as void as a matter of law."

16

1121415

Deng and DM's brief, at 15.

However, in HIF Bio, Inc. v. Yung Shin Pharmaceuticals Industrial Co., 600 F.3d 1347, 1354 (Fed. Cir. 2010), the United States Court of Appeals for the Federal Circuit ("the Federal Circuit") stated: "Despite th[e] broad language [in American Cyanamid], this court has emphasized that a claim arises under the patent laws only if the inventorship issue is essential to the resolution of the claims." The Federal Circuit noted:

> "The district court's jurisdiction under § 1338(a) 'extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims.'"

HIF Bio, 600 F.3d at 1352 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988)).

Citing American Cyanamid, among others, the Federal Circuit concluded in HIF Bio that the plaintiffs' claims for a declaratory judgment as to inventorship and slander of title were preempted by federal patent law because a determination of inventorship was essential to the resolution of those claims. The Federal Circuit went on to conclude, however,

17

that "patent law [was] not essential to plaintiffs' remaining causes of action," including their fraud claims, because "each cause of action could be resolved without reliance on the patent laws." 600 F.3d at 1355. The Federal Circuit concluded that, even though the question of inventorship may be relevant to a claim, that claim is not preempted where "a determination of inventorship is not essential to any of the ... elements of [the claim]." HIF Bio, 600 F.3d at 1356.

The issue of the inventorship of the LED lamp tube may be relevant to Scroggins and Complete Lighting's fraud claim, but it is not essential to the particular elements of that claim.

> "'Fraud' is defined as (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation. If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive."

Coastal Concrete Co. v. Patterson, 503 So. 2d 824, 826 (Ala. 1987) (citation omitted).

Scroggins and Complete Lighting's fraud claim is based on Deng's allegedly false promise to put Scroggins's name on the patent application for the LED lamp tube, his alleged lack of

intent when he made the promise to fulfill that promise, and the damage Scroggins and Complete Lighting allegedly suffered by relying on that promise. Scroggins's status as the actual inventor of the LED lamp tube is not essential to proving any of those allegations or any other element of a fraud claim based on an allegedly false promise. Thus, although the issue of inventorship may be relevant to the fraud claim in this case, it is not essential to a resolution of that claim, and "[Scroggins and Complete Lighting's] right to relief [does not] necessarily depend[] on the resolution of a substantial question of federal patent law." Christianson, 486 U.S. at 809. Thus, the fraud claim is not federally preempted under § 1338(a), and Deng and DM are not entitled to have that claim dismissed for lack of subject-matter jurisdiction. See HIF Bio, supra.[4]

---

[4]Deng and DM also cite Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318 (Fed. Cir. 1998), for the proposition that "if a state-law cause of action requiring a 'false statement' as an element attacks the validity of a patent, it necessarily depends on a question of federal patent law and the federal courts have exclusive subject matter jurisdiction over the action, even where no federal cause of action is otherwise involved." Deng and DM's brief, at 13. However, Scroggins and Complete Lighting have not challenged the validity of the patent or requested any changes be made to the patent or sought a declaration of rights under the patent. Instead, they have alleged that Deng fraudulently promised to

Deng and DM also argue that even if the circuit court has jurisdiction over the fraud claim, they are entitled to a JML on that claim because "Scroggins [and Complete Lighting] failed to ... present evidence of reasonable reliance, proximate cause of damages, or intent to deceive." Deng and DM's brief, at 42. With regard to reasonable reliance, Deng and DM argue that "Scroggins's testimony that he relied on Deng's alleged promise that Scroggins would be put on the Patent is unreasonable as a matter of law. Scroggins drafted the [exclusivity] [a]greement. That [a]greement stated that only Deng would be listed on the patent." Deng and DM's brief, at 46.

However, the exclusivity agreement does not address the acquisition of a patent for the LED lamp tube or state who would be listed on any patent. Scroggins testified at trial that Deng promised him that "[he] would be a partner" and that "[he] would be on [the patent]." Scroggins testified that "if [Deng] had not made that promise," Scroggins would have located a different source to manufacture the LED lamp tube.

---

include Scroggins on the patent application for the LED lamp tube and that Scroggins and Complete Lighting suffered damage as a result of that false promise. Thus, Deng and DM's reliance on Hunter Douglas is misplaced.

1121415

When the evidence is viewed in the light most favorable to Scroggins and Complete Lighting as nonmovants, see Waddell, supra, Scroggins's testimony is sufficient to create a jury question as to whether Scroggins reasonably relied on Deng's alleged promise. Thus, Deng and DM have not demonstrated that they are entitled to a JML in this regard.[5]

Deng and DM next argue that they are entitled to a JML on the fraud claim because "Scroggins [and Complete Lighting] presented no evidence that any alleged misrepresentations by Deng proximately caused damage to Scroggins [and Complete Lighting]." Deng and DM's brief, at 47. Deng and DM argue that, "[u]nder federal patent law, co-inventors of a patent are not accountable to one another for profits or sales of the

---

[5]Deng and DM also argue that Scroggins's reliance on Deng's promise to put his name on the patent was unreasonable because, they say, Scroggins was on notice of the alleged misrepresentation. However, it is unclear how the evidence they cite in support of this argument -- i.e., that Scroggins believed that a retrofit LED tube was essentially the same as an LED lamp tube, that Scroggins was aware that Deng had sold retrofit LED tubes to BARTCO a few months before the exclusivity agreement was signed, that Scroggins prepared the exclusivity agreement to protect his interest in the LED lamp tube, and that "Scroggins could not reasonably have believed that Deng agreed that the Retrofit and LED Lamp Tube[s] were the same product," Deng and DM's brief, at 47, -- would put Scroggins on notice that Deng's alleged promise to put his name on the patent was false.

patented product. Thus, even [if] Scroggins had been listed on the Patent of the LED [l]amp [t]ube, Deng would have had no duty to pay Scroggins any royalties." Deng and DM's brief, at 48. However, Scroggins and Complete Lighting did not allege injuries in the form of lost royalties but, instead, alleged that Deng and DM had essentially stolen the idea for the LED lamp tubes by not including Scroggins on the patent and that Scroggins and Complete Lighting were entitled to recover damages based on "the value of the stolen product" and lost opportunities for future sales of that product. Scroggins and Complete Lighting's brief, at 67.

Deng and DM also make the following argument in their brief:

> "Scroggins did not present any evidence that he ever attempted to apply for a patent on the LED Lamp Tube; nor did Scroggins present any evidence that he ever tried to stop the patent application process; nor did he complain to the Patent and Trademark Office that Deng was attempting to patent his idea. Thus, it is illogical to conclude the Deng's alleged misrepresentation that he would put Scroggins on the Patent was the proximate cause of any damage[] Scroggins may have suffered."

Deng and DM's brief, at 48.

However, Scroggins testified that Deng had promised to include him on the patent that he, Deng, was going to apply

22

for, that Scroggins learned that Deng had applied for a patent in China in Deng's name only some months after the application had been filed, and that when Scroggins asked Deng about it, Deng assured him that everything would be as they had planned (i.e., that both Scroggins and Deng would be included on the United States patent application for the LED lamp tube). This testimony is sufficient to create a question of fact as to whether Deng's allegedly false promise to include Scroggins on the patent proximately caused Scroggins and Complete Lighting's alleged injuries. Therefore, Deng and DM have not demonstrated that they are entitled to a JML in that regard.

Deng and DM also argue that they are entitled to a JML on the fraud claim because, they say, Scroggins and Complete Lighting "failed to present substantial evidence that, when Deng allegedly promised to put Scroggins on the Patent, Deng had a present intent to deceive Scroggins and not perform his promise. Deng's alleged failure to perform a promised act is not sufficient proof of a present intent to deceive." Deng and DM's brief, at 49. However, Deng testified at trial that he never intended to include Scroggins's name on the patent. Deng and DM do not argue or cite any authority indicating that

23

this testimony, combined with Scroggins's testimony that Deng had promised to put his name on the patent, is insufficient to create an issue of fact for the jury as to Deng's intent at the time the alleged promise was made. Thus, Deng and DM have not demonstrated that the circuit court erred in denying their motion for a JML on that basis.

Deng and DM argue that they are entitled to a new trial "because [the jury's verdict] was based upon pure speculation by Scroggins." Deng and DM's brief, at 22. Deng and DM argue that, "[i]n Alabama, damages cannot be based upon speculation; rather, they must be direct and reasonably certain." Deng and DM's brief, at 22.

This Court has stated:

"[D]amages may be awarded only where they are reasonably certain. Damages may not be based upon speculation. ... However, 'this does not mean that the plaintiff must prove damages to a mathematical certainty .... Rather, he must produce evidence tending to show the extent of damages as a matter of just and reasonable inference.' C. Gamble, Alabama Law of Damages § 7-1 (2d ed. 1998), as cited in Industrial Chemical [& Fiberglass Corp. v. Chandler, 547 So. 2d 812, 820 (Ala. 1988)]. The rule that one cannot recover uncertain damages relates to the nature of the damages, and not to their extent. If the damage or loss or harm suffered is certain, the fact that the extent is uncertain does not prevent a recovery."

24

Jamison, Money, Farmer & Co. v. Standeffer, 678 So. 2d 1061, 1067 (Ala. 1996). See also Alabama Power Co. v. Alabama Public Serv. Comm'n, 267 Ala. 474, 478, 103 So. 2d 14, 17 (1958) ("One of the fundamental rules of damages is that to be compensable they must be direct and reasonably certain, not remote and speculative."); Crommelin v. Montgomery Indep. Telecasters, Inc., 280 Ala. 391, 394, 194 So. 2d 548, 551 (1967) ("[N]either the fact nor amount of damages, nor the cause of the damages, can rest solely on speculation.").

"'This Court has held that "the general rule is that compensatory damages are intended only to reimburse one for the loss suffered by reasons of an injury to a person or property." Sessions Co. v. Turner, 493 So. 2d 1387, 1390 (Ala. 1986). It is equally well established that damages may not be awarded where they are remote or speculative.'" Torsch v. McLeod, 665 So. 2d 934, 940 (Ala. 1995) (quoting United Servs. Auto. Ass'n v. Wade, 544 So. 2d 906, 912 (Ala. 1989)). In a fraud action, "[t]he purpose of damages ... is to place the defrauded person in the position he would occupy if the representations had been true. All naturally resulting damages, including expenses incurred as a result of the fraud,

are recoverable, but they must be actual damages proved at trial." Wilhoite v. Franklin, 570 So. 2d 1236, 1237 (Ala. Civ. App. 1990) (citation omitted).

Scroggins and Complete Lighting argue that, as a result of Deng's fraudulent promise to include him on the patent for the LED lamp tubes, they lost out on the value of that product, including future sales of the product. At trial, Scroggins testified as follows:

"Q: When ... you and [Deng] first started talking about this product and you told him about your idea as it developed, did y'all ever discuss either of y'all's opinions about the value of the product?

"A: Yes, sir, we both did.

"Q: And what, if anything, did [Deng] say about the value -- his opinion of the value of the product?

"A: We both agreed it was in the millions."

Scroggins also testified that the possibility that the LED lamp tubes could be used for more than aquarium lighting substantially increased Scroggins's opinion of its value. He stated:

"When [Wal-mart] looked at what they were looking at, they come out telling me what else it could be used for. What I thought it was worth multiplied by 100-fold because we were talking now

26

not only -- not only displays, we were talking refrigerator cabinets. We were talking shoe displays. We were talking sporting displays. We were talking every display you could think of in the store and that was only one customer, so you know."

When asked what his opinion as to the value of the LED lamp tubes was based on, Scroggins responded:

"That you had one trial store that was crazy about it for one particular part of that store and when they came out and brought out everything else that it could be done with, things I hadn't even thought of, that I realized that one store had just quadrupled or whatever the word is and that was only one store out of all of them in the United States, all the different people."

Scroggins cited no other basis for his testimony that the LED-lamp-tube idea was worth millions, and Scroggins and Complete Lighting presented no other evidence as to the value of the LED lamp tubes or the amount of the loss they incurred as a result of the alleged fraud. During closing arguments, Scroggins and Complete Lighting's counsel attempted to establish a formula that would support Scroggins's testimony that the value of the LED lamp tubes was "in the millions." Scroggins's counsel stated:

"[L]et's talk about the damages and why there is sort of a legitimate basis. ... We know that there was a Gabriel Logan sale that consisted of $90,000 for 25 stores.

27

"Now, for 25 stores, that's approximately or exactly $3,600 per store. ... So Walmart at the time had over 5,200 stores and Buddy testified about that. ...

"....

"Now, 5,200 at $3,600 per store, that's how much it is, $18,720,000, a big number, a substantial number. You can do that for all sorts of stores. Gabriel Logan would have been selling to everybody. I think -- I think -- who knows, Target [Corporation] has thousands of stores talking about thousands of stores, 1.2 million -- I mean, excuse me, 6.12 million.

"Well, what would the commission be on ideas like that, talking about times .05. I mean, we're just talking about what he would be entitled to under an exclusive agreement. We're not even talking about what he would be entitled to if he owned half the patent like he was supposed to. I'm trying to be pretty conservative here and when you're conservative here, you're talking about almost one million dollars just on Walmart, just on Walmart. So there is evidence of damages that you could say yes, that is a reasonable amount of damages."

The arguments of counsel are not evidence. Scroggins did not testify as to the per unit value of the LED lamp tubes or indicate that he had reached his estimate of the value by taking the per unit cost and multiplying it by the number of stores Wal-mart had in operation. No evidence was presented that would corroborate counsel's statement that there was 5,200 Wal-mart stores in operation at the time Scroggins and

1121415

Deng sold the 25 samples to Gabriel Logan[6] or that Target Corporation had "thousands" of stores in operation.

Moreover, there was no evidence presented other than Scroggins's conjecture that future sales to Wal-mart or Target were pending or likely to happen or that the LED lamp tubes had been marketed to or sought after by any customers for any purposes other than aquarium or display-case lighting. In fact, Deng and DM presented undisputed evidence that, in spite of the apparent initial enthusiasm of the "one trial store," no sales of the LED lamp tubes were made beyond the 25 samples sold to Gabriel Logan in 2006. Deng and DM received $88,940.22 for that sale, and that amount did not include the cost of repairs that had to be made to the 25 samples as a result of problems with the LED lighting. Thus, Scroggins's testimony as to the value of the LED lamp tubes was highly speculative and was insufficient to justify the jury's award of $1.5 million in compensatory damages on the fraud claim.

---

[6]Scroggins was asked during trial to give a "ballpark" figure of how many stores Wal-mart had, to which he responded: "Five thousand, you know, sticks out." Scroggins did not testify as to the basis of that estimate, and no other evidence was presented to support it.

Scroggins and Complete Lighting argue that Scroggins's testimony as to the market value of the LED lamp tubes was in the nature of opinion evidence, pursuant to § 12-21-114, Ala. Code 1975, and Delmore v. Gonzales, 903 So. 2d 140 (2004), and that such testimony is sufficient to support the compensatory-damages award. Section 12-21-114 provides: "Direct testimony as to the market value is in the nature of opinion evidence; one need not be an expert or dealer in the article, but may testify as to value if he has had an opportunity for forming a correct opinion." In Delmore, this Court determined that the testimony of the plaintiffs as to the value of certain property they had inherited from their mother and that, they argued, had been converted by their stepfather was admissible to prove damages.

This Court stated:

"[A]ll that is required under §12-21-114, Ala. Code 1975; Rule 701, Ala. R. Evid., and Williamson[ v. Stephens, 577 So. 2d 1272 (Ala. 1991),] is that a person's testimony as to value be rationally based on their perception or based on an opportunity to form a correct opinion. The evidence, when viewed in light most favorable to [the plaintiffs], shows that their testimony was rationally based on their perceptions or that they had an opportunity for forming a correct opinion as to the value of their mother's personal property because their mother owned some of the property when [one of the

plaintiff's] lived with her and they both visited their mother's home on a frequent basis. The manner in which [the plaintiffs] determined the value of their mother's personal property goes to the weight that will be assigned by the jury but is not a question of admissibility. The trial court erroneously excluded the list of personal property that included [one of the plaintiff's] determination of the value of the personal property. The judgment is reversed as to this issue, and the case is remanded for further proceedings consistent with this opinion."

Delmore, 903 So. 2d at 144.

Deng and DM's argument here is not that Scroggins's testimony as to the value of the LED lamp tubes was inadmissible but that the testimony, by itself, is not competent evidence supporting the jury's $1.5 million compensatory-damages award. See Johnson v. Harrison, 404 So. 2d 337, 340 (Ala. 1981) ("The rule has long been established that the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence. ... The award of damages cannot be made upon speculation, and the plaintiff has the burden of offering evidence tending to show to the required degree, the amount of damages allegedly suffered."). Moreover, unlike the plaintiffs' testimony in Delmore, Scroggins's testimony that the LED lamp tubes were worth "millions" was not a statement

31

as to the actual market value of the LED lamp tubes but as to the potential market value of that product based on speculation as to potential uses and future sales. Delmore is distinguishable in that regard.

Scroggins and Complete Lighting also argue that Deng and DM's failure to object to Scroggins's testimony that the value of the LED lamp tubes was "in the millions" "pretermits" consideration of their argument on appeal that the compensatory-damages award is based on speculative evidence. Scroggins and Complete Lighting's brief, at 39. They cite Robbins v. Sanders, 890 So. 2d 998 (Ala. 2004), in support of that argument. However, in Robbins, this Court addressed whether a failure to object to evidence of certain damages presented at trial precluded the defendant from arguing on appeal that "the trial court improperly awarded damages for claims that were not pleaded in the plaintiffs' complaint." 890 So. 3d at 1009. Robbins does not stand for the proposition that a failure to object to specific testimony as to the amount of damages when that testimony is given precludes an argument on appeal that that testimony is

insufficient, by itself, to support the damages award.  Thus, Scroggins's reliance on Robbins is misplaced.

Moreover, although Deng and DM did not object when Scroggins testified that the LED lamp tubes were worth "millions," they did argue in their motion for a JML at the close of Scroggins and Complete Lighting's case-in-chief and in their renewed motion for a JML at the close of all the evidence that the claimed damages were based on "pure speculation."  Deng and DM also objected during closing arguments to figures presented by Scroggins and Complete Lighting's counsel, purportedly giving a "legitimate basis" for the damages.  Deng and DM argued that the figures were "just pure speculation.  There's no testimony about that." This objection and the arguments made in the motions for a JML were sufficient to preserve this issue for appellate review. See Ex parte Couilliette, 857 So. 2d 793, 794 (Ala. 2003) ("'"[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof."'" (quoting McKinney v. State, 654 So. 2d 95, 99 (Ala. Crim. App. 1995)).

The jury's award of $1.5 million in compensatory damages on the fraud claim was based on speculative evidence as to possible future uses and the value of potential future sales of the LED lamp tubes. "Although they need not be proved to a mathematical certainty, 'damages [for fraud] may not be awarded where they are remote or speculative. A jury must have some reasonable basis for the amount of its award.'" Systrends, Inc. v. Group 8760, LLC, 959 So. 2d 1052, 1075 (Ala. 2006) (quoting Parsons v. Aaron, 849 So. 2d 932, 949 (Ala. 2002)). Therefore, "[t]here being no evidentiary basis for the compensatory damages awarded [to Scroggins and Complete Lighting on the fraud claim]," the circuit court erred plainly and palpably in denying Deng and DM's motion for a new trial. See Systrends, 959 So. 2d at 1079.

Moreover, "[b]ecause the compensatory-damages award has been eliminated, the punitive damages awarded on this claim must also be vacated." Systrends, 959 So. 2d at 1079 (citing Life Ins. Co. of Georgia v. Smith, 719 So. 2d 797, 806 (Ala. 1998) ("We now require ... that a jury's verdict specifically award either compensatory damages or nominal damages in order for an award of punitive damages to be upheld."). Our

34

decision in this regard pretermits consideration of Deng and DM's arguments that they were entitled to a new trial because the award of punitive damages was not supported by clear and convincing evidence, was excessive, or was the result of prejudice, bias, passion, or other improper motives. Our holding in this regard also pretermits consideration of Deng and DM's arguments that they were entitled to a new trial because, they argue, Scroggins and Complete Lighting changed the nature of their fraud claim at trial or because, they say, Scroggins's testimony at trial contradicted his earlier affidavit testimony.

## Conclusion

For the foregoing reasons, we reverse the circuit court's judgment based on the jury's verdict in favor of Scroggins and Complete Lighting on the fraud claim and remand the case for the entry of an order granting a new trial as to that claim. We affirm the circuit court's judgment as to the breach-of-contract claim.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.

Moore, C.J., and Stuart, Bolin, Parker, Murdock, Shaw, Main, and Wise, JJ., concur.

35